## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| TRUIST BANK | § | |
|     PLAINTIFF | § | |
| | § | |
| V. | § | CASE NO. 3:20-CV-03607-X |
| | § | |
| CUZZCAST GOURMET GELATO, LLC, | § | |
| SUSAN N. CUZZO, & MAGGIE A. CASTER | § | |
|     DEFENDANTS | § | |

### APPENDIX IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| Exhibit | Description | App |
|---------|-------------|-----|
| A | Declaration of Leslie Rodgers | App. 001 - 003 |
| A-1 | Promissory Note | App. 004 - 007 |
| A-2 | Cuzzo Commercial Guaranty | App. 008 - 014 |
| A-3 | Caster Commercial Guaranty | App. 015 - 019 |
| A-4 | Truist Bank's Notice of Default and Acceleration & Demand for Payment | App. 020 - 024 |
| B | Truist Bank's First Set of Combined Discovery Requests to Susan N. Cuzzo | App. 025 - 034 |
| C | Truist Bank's First Set of Combined Discovery Requests to Maggie A. Caster | App. 035 - 045 |
| D | Declaration of Ekaterina G. Long | App. 046 - 050 |
| D-1 | Professional Fee Invoices (partially redacted) | App.  051 - 078 |

Respectfully Submitted,

By: s/ Ekaterina G. Long

**Kenneth C. Johnston**
Texas Bar No. 00792608
kjohnston@johnstonclem.com

**Ekaterina G. Long**
Texas Bar No. 24102700
klong@johnstonclem.com

**JOHNSTON CLEM GIFFORD PLLC**
1717 Main Street, Suite 3000
Dallas, Texas 75201
(214) 974-8000 Main
(972) 474-1718 K. Johnston Direct

***Attorneys for Truist Bank***

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| TRUIST BANK | § | |
|     PLAINTIFF | § | |
| | § | |
| v. | § | CASE NO. 3:20-CV-03607-X |
| | § | |
| CUZZCAST GOURMET GELATO, LLC, | § | |
| SUSAN N. CUZZO, & MAGGIE A. CASTER | § | |
|     DEFENDANTS | § | |

### DECLARATION OF LESLIE RODGERS

Pursuant to 28 U.S.C. § 1746, I, Leslie Rodgers, declare:

1.      "I am over 18 years of age and have never been convicted of any felony or other crime involving moral turpitude. I am fully competent to make this declaration. I am a Senior Vice President and Asset Manager with Truist Bank's Commercial Asset Resolution Team.

2.      I routinely review loan documents such as promissory notes, commercial security agreements, and commercial guarantees. I routinely supervise collection and foreclosure efforts for Truist Bank. I also routinely calculate payments due under promissory notes and guarantees. I have performed these duties for hundreds of instruments, and I am familiar with the calculation of principal, interest, and late fees, the application of payments, and the other duties associated with the instruments described below.

3.      In my capacity as a Senior Vice President and Asset Manager, I have gained personal knowledge of the loan that Truist Bank extended to Cuzzcast Gourmet Gelato, LLC, Susan N. Cuzzo, and Maggie A. Caster ("Defendants") and the facts surrounding Truist Bank's demand for payment and Defendants' failure to repay the loan and the outstanding balance, penalties, and interest associated with the loan.

4.      As part of my duties, I serve as a custodian of records for Truist Bank, including the instruments that form the basis of Truist Bank's claims against the Defendants. Truist Bank keeps the records I identify in this declaration in the regular course of business. A person with knowledge of the act, event, condition, or opinion recorded in these records made these records at or near the time, or reasonably soon after, the act, event, or condition occurred or after the opinion was made. The records I identify in this declaration are the originals or the exact duplicates of the originals.

5.      On June 22, 2018, Truist Bank made a loan to Cuzzcast Gourmet Gelato, LLC, as evidenced by a promissory note in the original principal amount of $153,000.00. Cuzzcast Gourmet Gelato, LLC, through its managing members, Susan N. Cuzzo, and Maggie A. Caster, signed the note and delivered it to the bank. Truist Bank is the owner and holder of the note. A true and correct copy of the note is attached as **Exhibit A-1**.

**EXHIBIT A**

6.      On June 22, 2018, Susan N. Cuzzo and Maggie A. Caster each signed a commercial guaranty. Through their guaranty, Susan N. Cuzzo and Maggie A. Caster agreed to "absolutely and unconditionally guarantee the full and punctual payment and satisfaction of the [i]indebtedness" due under the note. Truist Bank is the owner and holder of each guaranty. A true and correct copy of each guaranty is attached as **Exhibits A-2 & A-3.**

7.      In accordance with the note and in reliance on each guaranty, Truist Bank loaned $153,000 to Cuzzcast Gourmet Gelato, LLC.

8.      The note obligated Cuzzcast Gourmet Gelato, LLC, to repay the outstanding balance on the principal and accrued interest by June 5, 2023. Cuzzcast Gourmet Gelato, LLC's failure to "make any payment when due" constituted default under the note. Upon Cuzzcast's default, the note entitled Truist Bank to accelerate the entire outstanding balance.

9.      Cuzzcast Gourmet Gelato, LLC failed to pay its monthly payment, and Truist Bank accelerated the entire principal and interest due under the note on September 5, 2020.

10.      On October 9, 2020, Truist Bank mailed its Notice of Default and Acceleration and Demand for Payment ("Demand") to Cuzzcast Gourmet Gelato, LLC, Susan N. Cuzzo, and Maggie A. Caster via first class mail and certified mail return receipt requested. A true and correct copy of the Demand is attached as **Exhibit A-4**.

11.      Neither Cuzzcast Gourmet Gelato, LLC, nor Susan N. Cuzzo, nor Maggie A. Caster repaid the loan. As of May 12, 2021, the outstanding indebtedness due under the note is $116,424.18, excluding legal fees and costs, itemized as follows:

| Description | Amount |
|---|---|
| Principal | $111,204.63 |
| Interest | $5,189.55 |
| Late Fee and Costs | $30.00 |
| **Total** | **$116,424.18** |

The outstanding indebtedness accrues interest at the per diem rate of $18.53410.

12.      In response to Cuzzcast Gourmet Gelato, LLC's, Susan N. Cuzzo's, and Maggie A. Caster's failures to repay the loan, Truist Bank hired Johnston Clem Gifford PLLC to enforce Truist Bank's rights and remedies under the note, each guaranty, and applicable law."

I declare under penalty of perjury that the foregoing is true and correct.

**SIGNED** on this 19th day of May 2021.

**Leslie Rodgers**
Senior Vice President / ARG Asset Manager III
Truist Bank / Commercial Asset Resolution Team

[redacted]9774000011472*

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $153,000.00 | 06-22-2018 | 06-05-2023 | 00001 | | [redacted]9774 | 4226 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** CUZZCAST GOURMET GELATO, LLC
3699 McKinney Ave, Ste 101B
Dallas, TX 75204

**Lender:** BRANCH BANKING AND TRUST COMPANY
Central DFW - Cedar Springs
2404 Cedar Springs Rd
Dallas, TX 75201-1408

---

**Principal Amount: $153,000.00** **Date of Note: June 22, 2018**

**PROMISE TO PAY. CUZZCAST GOURMET GELATO, LLC ("Borrower") promises to pay to BRANCH BANKING AND TRUST COMPANY ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Fifty-three Thousand & 00/100 Dollars ($153,000.00), together with interest on the unpaid principal balance from June 22, 2018, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 6.000%, until maturity.**

**PAYMENT. Borrower will pay this loan in 60 payments of $2,955.95 each payment. Borrower's first payment is due July 5, 2018, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on June 5, 2023, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied to any unpaid collection costs, late and other charges and fees, accrued unpaid interest, and principal in such order as Lender may determine in its sole and absolute discretion. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.**

**INTEREST CALCULATION METHOD. Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding, unless such calculation would result in a usurious rate, in which case interest shall be calculated on a per diem basis of a year of 365 or 366 days, as the case may be. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.**

**REAMORTIZATION.** In the event periodic accruals of interest based upon a variable rate of interest exceed any periodic fixed payment amount set forth above, the fixed payment amount shall, in Lender's sole discretion, be increased or additional supplemental interest payments shall be required on the same periodic basis as specified above, in such amounts and at such times as are necessary to pay all accruals of interest for the period and all accruals of unpaid interest from previous periods. Such adjustments to the fixed payment amount or supplemental interest payments shall remain in effect for so long as the interest accruals exceed the original fixed payment amount and shall be further adjusted upward or downward to reflect changes in the variable interest rate; provided the fixed payment shall not be reduced below the original fixed payment amount.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest and all other amounts, costs and expenses for which Borrower is responsible under this Note or any other agreement with Lender pertaining to this loan, and in no event will Borrower ever be required to pay any unearned interest. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: BRANCH BANKING AND TRUST COMPANY, Central DFW - Cedar Springs, 2404 Cedar Springs Rd, Dallas, TX 75201-1408.**

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **5.000% of the regularly scheduled payment.**

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 15%. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Note or the related documents in connection with the obtaining of the loan evidenced by this Note or any security document directly or indirectly securing repayment of this Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan.

**PROMISSORY NOTE**

**(Continued)**

This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the related documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Collateral.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**CHANGE IN OWNERSHIP - LIMITED LIABILITY COMPANY.** The issue, transfer or sale of an ownership interest of twenty-five percent (25%) or more of the Borrower or Guarantor that is a limited liability company shall constitute an Event of Default under this instrument or agreement.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire indebtedness, including the unpaid principal balance under this Note, all accrued unpaid interest, and all other amounts, costs and expenses for which Borrower is responsible under this Note or any other agreement with Lender pertaining to this loan, immediately due, without notice, and then Borrower will pay that amount.

**LENDER'S REMEDIES.** Upon an Event of Default, in addition to Lender's rights set forth above, Lender may, at its option and without notice to Borrower (i) cease making advances or disbursements including during any cure period; (ii) advance funds necessary to remedy any default or pay any lien filed against any of the Collateral; (iii) take possession of the Collateral or any part thereof; (iv) foreclose Lender's security interest and/or lien on any Collateral in accordance with applicable law; (v) make demand upon any or all Guarantors; and (vi) exercise any other right or remedy which Lender has under the Note or any related documents or which is otherwise available at law or in equity. Upon an Event of Default, Lender may immediately apply the rate specified in the Interest After Default provision set forth above until the default has been satisfactorily cured or until the Indebtedness has been paid in full, and such rate shall apply after judgment. All of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Any election by Lender to pursue any remedy shall not exclude the right to pursue any other remedy unless expressly prohibited by law, and any election by Lender to make expenditures or to take action to perform an obligation of Borrower, or of any Grantor, shall not affect Lender's right to declare a default and exercise its rights and remedies.

**RETURN PAYMENT FEE.** Borrower shall pay to Lender a returned payment fee if the Borrower or any other obligor hereon makes any payment at any time by check or other instrument, or by any electronic means, which is returned to Lender because of nonpayment due to nonsufficient funds.

**WAIVER BY BORROWER.** To the maximum extent permitted by applicable law, Borrower hereby waives all rights, remedies, claims, and defenses based upon or related to Sections 51.003, 51.004, and 51.005 of the Texas Property Code, to the extent the same pertain or may pertain to any enforcement of this Note.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire an attorney to help collect this Note if Borrower does not pay, and Borrower will pay Lender's reasonable attorneys' fees. Borrower also will pay Lender all other amounts Lender actually incurs as court costs, lawful fees for filing, recording, releasing to any public office any instrument securing this Note; the reasonable cost actually expended for repossessing, storing, preparing for sale, and selling any security; and fees for noting a lien on or transferring a certificate of title to any motor vehicle offered as security for this Note, or premiums or identifiable charges received in connection with the sale of authorized insurance.

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Texas.**

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein: inventory, chattel paper, accounts, equipment and general intangibles described in a Commercial Security Agreement dated June 22, 2018.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**REQUIRED INFORMATION FOR A NEW LOAN.** To help the government fight the funding of terrorism and money laundering activities, federal law requires Lender to obtain, verify and record information that identifies each person or entity obtaining a loan including the Borrower's legal name, address, tax identification number, date of birth, driver's license, organizational documents or other identifying documents. Failure to provide the required information will result in a violation of the U.S. Patriot Act and will constitute a default under this instrument or agreement.

In addition, none of the Borrower, any of its affiliates, or any of their respective directors, officers, managers, partners, or any other authorized representatives is named as a "Specially Designated National and Blocked Person", on the list published by the U.S. Department of the Treasury Office of Foreign Assets Control (OFAC) at its official website.

**BUSINESS PURPOSE.** This instrument is entered into for a business purpose, does not evidence or constitute a "consumer transaction", as defined in the Uniform Commercial Code, and none of the proceeds of the loan evidenced hereby have been or will be used for personal, family or household purposes.

**USURY SAVINGS CLAUSE.** It is the intention of Lender and Borrower to comply strictly with all applicable usury laws; and, accordingly, in no event shall Lender ever be entitled to charge, collect, or apply as interest any interest, fees, charges, or other payments equivalent to interest, in excess of the maximum rate which the Lender may lawfully charge under applicable state and federal statutes and laws from time to time in effect; and, in the event that Lender ever receives, collects, or applies as interest, any such excess, such amount which, but for this provision, would be excessive interest shall be applied to the reduction of the unpaid principal amount of the Note; and, if said principal amount and all lawful interest thereon is paid in full, any remaining excess shall be refunded to Borrower. All interest paid or agreed to be paid shall, to the maximum extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of the loan, including any renewals, until payment in full of the principal. Any provision hereof, or of any other agreement between Lender and Borrower, that operates to bind, obligate, or compel Borrower to pay interest in excess of such maximum lawful contract rate shall be construed to require the payment of the maximum rate only. The provisions of this paragraph shall be given precedence over any other provision contained herein or in any other agreement between Lender and Borrower that is in conflict with the provisions of this paragraph.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**CHOICE OF VENUE.** Any legal action with respect to the Indebtedness evidenced by this instrument or agreement may be brought in the courts of the State/Commonwealth/District in which Lender's branch office set forth above is located or in the appropriate United States District Court situated in such State/Commonwealth/District, and Borrower hereby accepts and unconditionally submits to the jurisdiction of such courts. Borrower hereby waives any objection to the laying of venue based on the grounds of forum non conveniens with respect thereto.

**WAIVER OF JURY TRIAL. UNLESS EXPRESSLY PROHIBITED BY APPLICABLE LAW, EACH BORROWER AND LENDER, IF A PARTY HERETO, HEREBY WAIVES THE RIGHT TO TRIAL BY JURY OF ANY MATTERS OR CLAIMS ARISING OUT OF THIS INSTRUMENT OR AGREEMENT, ANY OF THE OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH OR OUT OF THE CONDUCT OF THE RELATIONSHIP BETWEEN ANY BORROWER AND LENDER. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN AND ENTER INTO THIS INSTRUMENT OR AGREEMENT. EACH BORROWER HEREBY CERTIFIES THAT NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. FURTHER, NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS THE AUTHORITY TO WAIVE, CONDITION OR MODIFY THIS PROVISION.**

**NOTICES.** Any notice required to be given under this Note shall be given in writing, and shall be effective when actually delivered, when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Note. Any party may change its address for notices under this Note by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**SEVERABILITY.** If a court of competent jurisdiction finds any provision of this Note to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision, illegal, invalid, or unenforceable as to any other circumstances. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Note. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Note shall not affect the legality, validity of enforceability of any other provision of this Note.

**TIME IS OF THE ESSENCE.** Time is of the essence in the performance of this Note.

**INTERPRETATION.** In all cases where there is more than one Borrower, then all words used in this Note in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Note or when this Note is executed by more than one Borrower, the words "Borrower" shall mean all and any one or more of them. The words "Borrower" and "Lender" include the heirs, successors, assigns, and transferees of each of them. Wherever possible, the provisions of this Note shall be interpreted in such a manner to be effective and valid under applicable law, but if any provision shall be determined to be invalid under such law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note. If any one or more of Borrower are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Note.

**UNIFORM COMMERCIAL CODE.** All references to the Uniform Commercial Code or UCC herein shall be to the Uniform Commercial Code as adopted by and under the laws of the jurisdiction governing this instrument or agreement.

**GENERAL PROVISIONS. NOTICE:** Under no circumstances (and notwithstanding any other provisions of this Note) shall the interest charged, collected, or contracted for on this Note exceed the maximum rate permitted by law. The term "maximum rate permitted by law" as used in this Note means the greater of (a) the maximum rate of interest permitted under federal or other law applicable to the indebtedness evidenced by this Note, or (b) the higher, as of the date of this Note, of the "Weekly Ceiling" or the "Quarterly Ceiling" as referred to in Sections 303.002, 303.003 and 303.006 of the Texas Finance Code. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Texas (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. The right to accelerate maturity of sums due under this Note does not include the right to accelerate any interest which has not otherwise accrued on the date of such acceleration, and Lender does not intend to charge or collect any unearned interest in the event of acceleration. All sums paid or agreed to be paid to Lender for the use, forbearance or detention of sums due hereunder shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of the loan evidenced by this Note until payment in full so that the rate or amount of interest on account of the loan evidenced hereby does not exceed the applicable usury ceiling. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, notice of dishonor, notice of intent to accelerate the maturity of this Note, and notice of acceleration of the maturity of this Note. Upon any change in the

**PROMISSORY NOTE**
**(Continued)**

| Loan No: 00001 | Page 4 |
|---|---|

terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

CUZZCAST GOURMET GELATO, LLC

By: _____
MAGGIE A. CASTER, Member & Manager of
CUZZCAST GOURMET GELATO, LLC

By: _____
SUSAN N. CUZZO, Member & Manager of
CUZZCAST GOURMET GELATO, LLC

Signed, acknowledged and delivered in the presence of:

X _____
Witness

X _____
Witness

# COMMERCIAL GUARANTY

| Borrower: | CUZZCAST GOURMET GELATO, LLC<br>3699 McKinney Ave, Ste 101B<br>Dallas, TX 75204 | Lender: | BRANCH BANKING AND TRUST COMPANY<br>Central DFW - Cedar Springs<br>2404 Cedar Springs Rd<br>Dallas, TX 75201-1408 |
|---|---|---|---|
| Guarantor: | SUSAN N. CUZZO<br>2726 Riviera Dr<br>Garland, TX 75040 | | |

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, Lender's reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation and Lender's written acknowledgment of receipt. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**CONSIDERATION FOR GUARANTY.** Guarantor represents to Lender that the making of the loan or other financial accommodations from Lender to Borrower will benefit, directly or indirectly, Guarantor. Guarantor acknowledges that Lender is relying upon this representation and the Guaranty provided by Guarantor in extending the loan or other financial accommodations to Borrower.

**ADDITIONAL OBLIGATIONS GUARANTEED.** Subject to any maximum amount, if any, guaranteed herein, the Guarantor hereby guarantees payment of any obligations under a Hedge Agreement, defined as any agreement between Borrower and Lender, whether now existing or hereafter arising, which provides for an interest rate, credit, commodity or equity swap or interest rate cap, floor or collar, any spot or forward foreign exchange transaction, currency swap, cross-currency swap, currency option or similar transaction or any combination of or option with respect to these or similar transactions, entered into for the purpose of hedging Borrower's exposure to fluctuation in interest or exchange rates, loan, credit, exchange, security or currency valuations or prices pursuant to any ISDA Master Agreement executed by Borrower and all Schedules and Confirmations entered into in connection therewith. All such obligations and expenses shall be added to and shall be a part of the Indebtedness.

App. 008

**EXHIBIT A-2**

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, **without notice or demand and without lessening or otherwise affecting Guarantor's liability under this Guaranty, from time to time:** (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S COVENANTS.** Guarantor represents, warrants, and covenants to Lender that: (A) if Guarantor is a corporation, partnership, limited partnership, limited liability partnership or limited liability company (i) it is duly organized and validly existing under the laws of its state of incorporation or organization and is duly qualified and in good standing in every other state in which the nature of its business shall require such qualification, (ii) it shall maintain its existence and good standing in the state of its incorporation or organization, (iii) it shall maintain its current legal form of business as shown on the authorization or resolution provided by Guarantor to Lender, (iv) it shall not change Guarantor's name, or enter into any merger, consolidation, reorganization or exchange of stock, ownership interests or assets, and (v) it shall remain qualified to do business in each jurisdiction in which such qualification is required; and (B) Guarantor will comply in all respects will all applicable laws, rules, regulations, and orders including, without limitation, paying before the delinquency thereof all taxes, assessments, and governmental charges imposed or assessed upon Guarantor or upon Guarantor's property.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor waives all rights of Guarantor under Chapter 43 of the Texas Civil Practice and Remedies Code. Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**ADDITIONAL WAIVERS BY GUARANTOR.** To the maximum extent permitted by applicable law, the Guarantor hereby waives all rights, remedies, claims, and defenses based upon or related to Sections 51.003, 51.004, and 51.005 of the Texas Property Code, to the extent the same pertain or may pertain to any enforcement of this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including Lender's reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas without regard to its conflicts of law provisions.**

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Choice of Venue.** Any legal action with respect to the indebtedness evidenced by this instrument or agreement may be brought in the courts of the State/Commonwealth/District in which Lender's branch office set forth above is located or in the appropriate United States District Court situated in such State/Commonwealth/District, and Guarantor hereby accepts and unconditionally submits to the jurisdiction of such courts. Guarantor hereby waives any objection to the laying of venue based on the grounds of forum non conveniens with respect thereto.

**WAIVER OF JURY TRIAL. UNLESS EXPRESSLY PROHIBITED BY APPLICABLE LAW, EACH GUARANTOR AND LENDER, IF A PARTY**

HERETO, HEREBY WAIVES THE RIGHT TO TRIAL BY JURY OF ANY MATTERS OR CLAIMS ARISING OUT OF THIS INSTRUMENT OR AGREEMENT, ANY OF THE OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH OR OUT OF THE CONDUCT OF THE RELATIONSHIP BETWEEN ANY GUARANTOR AND LENDER. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN AND ENTER INTO THIS INSTRUMENT OR AGREEMENT. EACH GUARANTOR HEREBY CERTIFIES THAT NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. FURTHER, NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS THE AUTHORITY TO WAIVE, CONDITION OR MODIFY THIS PROVISION.

**Return Payment Fee.** Guarantor shall pay to Lender a returned payment fee if the Guarantor or any other obligor hereon makes any payment at any time by check or other instrument, or by any electronic means, which is returned to Lender because of nonpayment due to nonsufficient funds.

**TIME IS OF THE ESSENCE.** Time is of the essence in the performance of this Agreement.

**Eligible Contract Participant.** Notwithstanding anything to the contrary herein, any person that does not qualify as an Eligible Contract Participant (as defined in the Commodity Exchange Act, as amended) or otherwise does not qualify as an "indirect proprietorship" pursuant to the rules of the Commodity Futures Trading Commission, shall not be deemed a party to any guaranty of any swap agreement with Lender entered into or modified on or after October 12, 2012, and shall not be liable for any swap obligations to Lender arising from such swap agreement. The foregoing exclusion shall have no effect on any other obligation of such person to Lender under this Guaranty.

**Other Guarantors.** If any Indebtedness is guaranteed by two or more guarantors, the obligation of Guarantor shall be several and also joint with the other guarantors, and may be enforced at the option of Lender against each guarantor severally, any two or more jointly, or some severally and some jointly. Lender, in its sole discretion, may release any one or more of the guarantors for any consideration which it deems adequate, and may fail or elect not to prove a claim against the estate of any bankrupt, insolvent, incompetent or deceased guarantor; and thereafter, without notice to any guarantor, Lender may extend or renew any or all Indebtedness and may permit Borrower to incur additional Indebtedness, without affecting in any manner the unconditional obligation of any remaining guarantor. Guarantor acknowledges that the effectiveness of this Guaranty is not conditioned on any or all of the Indebtedness being guaranteed by another party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means CUZZCAST GOURMET GELATO, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation SUSAN N. CUZZO, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means BRANCH BANKING AND TRUST COMPANY, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED JUNE 22, 2018.

**GUARANTOR:**

X _____
**SUSAN N. CUZZO**

Signed, acknowledged and delivered in the presence of:

X _____
**Witness**

X _____
**Witness**

**COMMERCIAL GUARANTY**
(Continued)

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____Texas_____        )
                                          ) SS
COUNTY OF _____Dallas_____       )

This instrument was acknowledged before me on _____June 24_____, 20__19__ by **SUSAN N. CUZZO.**

> **PAMELLA NAOMI BUNGER**
> Notary Public
> STATE OF TEXAS
> My Comm. Exp. 04-13-21
> Notary ID # 13108728-7

Notary Public, State of Texas

LaserPro, Ver. 18.1.10.007 Copr. Finastra USA Corporation 1997, 2018.   All Rights Reserved.   - TX  C:\LPL-PRODCN7\LPL\E20.FC  TR-61766  PR-175

Lender:      Branch Banking and Trust Company
Borrower:    CUZZCAST GORMET GELATO, LLC
Guarantor:   SUSAN N. CUZZO

### ADDENDUM TO COMMERCIAL GUARANTY AGREEMENT
### (FOR SBA SMALL LOAN)

THIS ADDENDUM TO COMMERCIAL GUARANTY AGREEMENT ("Addendum") is made this 22nd day of June, 2018, and is incorporated in and shall be deemed to amend and supplement the Commercial Guaranty Agreement dated June 22, 2018 ("Guaranty Agreement") given by Guarantor to Lender guarantying a loan dated of even date herewith in the principal amount of $153,000.00 (including all renewals, extensions, modifications, and substitutions thereof the "Note").

Guarantor covenants and agrees as follows (notwithstanding anything to the contrary in the Guaranty Agreement):

1.    **SBA:** As used in the Guaranty Agreement, this Addendum or any other loan documents, SBA shall mean the Small Business Administration, an Agency of the United States of America.

2.    **SBA as Holder:** When SBA is the holder, the Note and this Guaranty will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notices, foreclosing liens, and any other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guaranty Agreement, Guarantor may not claim or assert any local or state law against SBA to deny any obligations, defeat any claims of SBA, or preempt federal law.

[SIGNATURES ON FOLLOWING PAGE]

## ADDENDUM TO GUARANTY AGREEMENT SIGNATURE PAGE

Borrower: CUZZCAST GORMET GELATO, LLC

Account Number: ████ 9774                         Note Number: 00001

Note Amount: $153,000.00                          Date: June 22, 2018

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Addendum to Guaranty Agreement.

### If Borrower is a Partnership, Limited Liability Company, Limited Liability Partnership, or Limited Liability Limited Partnership

WITNESS:                                   CUZZCAST GORMET GELATO, LLC
                                           Name of Partnership, LLC, LLP, OR LLLP

                                           By: _____(SEAL)
                                               Maggie A. Caster
                                               Member & Manager

                                           By: _____(SEAL)
                                               Susan N. Cuzzo
                                               Member & Manager

**App. 014**

*9774000011457*

# COMMERCIAL GUARANTY

| Borrower: | CUZZCAST GOURMET GELATO, LLC<br>3699 McKinney Ave, Ste 101B<br>Dallas, TX 75204 | Lender: | BRANCH BANKING AND TRUST COMPANY<br>Central DFW - Cedar Springs<br>2404 Cedar Springs Rd<br>Dallas, TX 75201-1408 |
| --- | --- | --- | --- |
| Guarantor: | MAGGIE A. CASTER<br>2726 Riviera Dr<br>Garland, TX 75040 | | |

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE**. For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS**. The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, Lender's reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY**. THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY**. This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation and Lender's written acknowledgment of receipt. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**CONSIDERATION FOR GUARANTY**. Guarantor represents to Lender that the making of the loan or other financial accommodations from Lender to Borrower will benefit, directly or indirectly, Guarantor. Guarantor acknowledges that Lender is relying upon this representation and the Guaranty provided by Guarantor in extending the loan or other financial accommodations to Borrower.

**ADDITIONAL OBLIGATIONS GUARANTEED**. Subject to any maximum amount, if any, guaranteed herein, the Guarantor hereby guarantees payment of any obligations under a Hedge Agreement, defined as any agreement between Borrower and Lender, whether now existing or hereafter arising, which provides for an interest rate, credit, commodity or equity swap or interest rate cap, floor or collar, any spot or forward foreign exchange transaction, currency swap, cross-currency swap, currency option or similar transaction or any combination of or option with respect to these or similar transactions, entered into for the purpose of hedging Borrower's exposure to fluctuation in interest or exchange rates, loan, credit, exchange, security or currency valuations or prices pursuant to any ISDA Master Agreement executed by Borrower and all Schedules and Confirmations entered into in connection therewith. All such obligations and expenses shall be added to and shall be a part of the Indebtedness.

**EXHIBIT A-3**

**COMMERCIAL GUARANTY**
**(Continued)**

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, **without notice or demand and without lessening or otherwise affecting Guarantor's liability under this Guaranty, from time to time:** (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S COVENANTS.** Guarantor represents, warrants, and covenants to Lender that: (A) if Guarantor is a corporation, partnership, limited partnership, limited liability partnership or limited liability company (i) it is duly organized and validly existing under the laws of its state of incorporation or organization and is duly qualified and in good standing in every other state in which the nature of its business shall require such qualification, (ii) it shall maintain its existence and good standing in the state of its incorporation or organization, (iii) it shall maintain its current legal form of business as shown on the authorization or resolution provided by Guarantor to Lender, (iv) it shall not change Guarantor's name, or enter into any merger, consolidation, reorganization or exchange of stock, ownership interests or assets, and (v) it shall remain qualified to do business in each jurisdiction in which such qualification is required; and (B) Guarantor will comply in all respects with all applicable laws, rules, regulations, and orders including, without limitation, paying before the delinquency thereof all taxes, assessments, and governmental charges imposed or assessed upon Guarantor or upon Guarantor's property.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor waives all rights of Guarantor under Chapter 43 of the Texas Civil Practice and Remedies Code. Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**ADDITIONAL WAIVERS BY GUARANTOR.** To the maximum extent permitted by applicable law, the Guarantor hereby waives all rights, remedies, claims, and defenses based upon or related to Sections 51.003, 51.004, and 51.005 of the Texas Property Code, to the extent the same pertain or may pertain to any enforcement of this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including Lender's reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Texas without regard to its conflicts of law provisions.**

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers will be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Choice of Venue.** Any legal action with respect to the Indebtedness evidenced by this instrument or agreement may be brought in the courts of the State/Commonwealth/District in which Lender's branch office set forth above is located or in the appropriate United States District Court situated in such State/Commonwealth/District, and Guarantor hereby accepts and unconditionally submits to the jurisdiction of such courts. Guarantor hereby waives any objection to the laying of venue based on the grounds of forum non conveniens with respect thereto.

**WAIVER OF JURY TRIAL. UNLESS EXPRESSLY PROHIBITED BY APPLICABLE LAW, EACH GUARANTOR AND LENDER, IF A PARTY**

HERETO, HEREBY WAIVES THE RIGHT TO TRIAL BY JURY OF ANY MATTERS OR CLAIMS ARISING OUT OF THIS INSTRUMENT OR AGREEMENT, ANY OF THE OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH OR OUT OF THE CONDUCT OF THE RELATIONSHIP BETWEEN ANY GUARANTOR AND LENDER. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN AND ENTER INTO THIS INSTRUMENT OR AGREEMENT. EACH GUARANTOR HEREBY CERTIFIES THAT NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. FURTHER, NEITHER ANY REPRESENTATIVE OF LENDER, NOR LENDER'S COUNSEL, HAS THE AUTHORITY TO WAIVE, CONDITION OR MODIFY THIS PROVISION.

**Return Payment Fee.** Guarantor shall pay to Lender a returned payment fee if the Guarantor or any other obligor hereon makes any payment at any time by check or other instrument, or by any electronic means, which is returned to Lender because of nonpayment due to nonsufficient funds.

**TIME IS OF THE ESSENCE.** Time is of the essence in the performance of this Agreement.

**Eligible Contract Participant.** Notwithstanding anything to the contrary herein, any person that does not qualify as an Eligible Contract Participant (as defined in the Commodity Exchange Act, as amended) or otherwise does not qualify as an "indirect proprietorship" pursuant to the rules of the Commodity Futures Trading Commission, shall not be deemed a party to any guaranty of any swap agreement with Lender entered into or modified on or after October 12, 2012, and shall not be liable for any swap obligations to Lender arising from such swap agreement. The foregoing exclusion shall have no effect on any other obligation of such person to Lender under this Guaranty.

**Other Guarantors.** If any Indebtedness is guaranteed by two or more guarantors, the obligation of Guarantor shall be several and also joint with the other guarantors, and may be enforced at the option of Lender against each guarantor severally, any two or more jointly, or some severally and some jointly. Lender, in its sole discretion, may release any one or more of the guarantors for any consideration which it deems adequate, and may fail or elect not to prove a claim against the estate of any bankrupt, insolvent, incompetent or deceased guarantor; and thereafter, without notice to any guarantor, Lender may extend or renew any or all Indebtedness and may permit Borrower to incur additional Indebtedness, without affecting in any manner the unconditional obligation of any remaining guarantor. Guarantor acknowledges that the effectiveness of this Guaranty is not conditioned on any or all of the Indebtedness being guaranteed by another party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means CUZZCAST GOURMET GELATO, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation MAGGIE A. CASTER, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means BRANCH BANKING AND TRUST COMPANY, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED JUNE 22, 2018.

GUARANTOR:

X _____
MAGGIE A. CASTER

Signed, acknowledged and delivered in the presence of:

X _____
Witness

X _____
Witness

**App. 018**

## COMMERCIAL GUARANTY
### (Continued)

Page 5

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Texas_ )
) SS
COUNTY OF _Dallas_ )

This instrument was acknowledged before me on _June 21st_ , 20 _18_ by **MAGGIE A. CASTER.**

> PAMELLA NAOMI BUNGER
> Notary Public
> STATE OF TEXAS
> My Comm. Exp. 04-13-21
> Notary ID # 13108728-7

_____
Notary Public, State of Texas

LaserPro, Ver. 18.1.10.007  Copr. Finastra USA Corporation 1997, 2018.  All Rights Reserved.  - TX  C:\LPL-PROD\CFI\LPL\E30.FC  TR-51788  PR-176



**Kenneth C. Johnston**
kjohnston@johnstonclem.com
(972) 474-1718 Direct

October 9, 2020

*Via First Class Mail and*
*CMRR No. 7019 1120 0001 2071 2163*
CUZZCAST GOURMET GELATO, LLC
3699 McKinney Avenue, Suite 101B
Dallas, Texas 75204

*Via First Class Mail and*
*CMRR No. 7019 1120 0001 2071 2156*
Maggie Ann Caster
2726 Riviera Drive
Garland, Texas 75040

*Via First Class Mail and*
*CMRR No. 7019 1120 0001 2071 2149*
Susan Nicole Cuzzo
2726 Riviera Drive
Garland, Texas 75040

### NOTICE OF DEFAULT AND ACCELERATION AND DEMAND FOR PAYMENT

Re:     Promissory Note (the "Note") in the original principal amount of $153,000.00, dated June 22, 2018, and made by Cuzzcast Gourmet Gelato, LLC ("Borrower") for the benefit of Branch Banking and Trust Company ("BB&T") and secured by, among other things, Commercial Guaranties executed by Maggie Ann Custer and Susan Nicole Cuzzo, respectively, (the "Guaranties") and a Commercial Security Agreement (the "Security Agreement") covering the Borrower's inventory, chattel paper, accounts, instruments, equipment, trade fixtures, and general intangibles, among others, which constitute the Collateral. The Note, the Guaranties, and the Security Agreement, together with their related amendments, addendums, and other documents, will be referred to as the "Loan Documents."

Dear Ms. Custer and Ms. Cuzzo:

My Firm represents Truist Bank, successor by merger to BB&T, regarding the debt owed by the Borrower under the Loan Documents. Please direct correspondence related to the Loan documents, except for payments, to my attention.

**Borrower's Default**

Borrower has defaulted under the Loan Documents by, among other things, failing to make payments when required. Borrower's default has triggered your respective personal obligations under the Guaranties. The Guaranties makes each of you individually liable to Truist Bank for the "full and punctual payment and satisfaction of the indebtedness" owed by Borrower to Truist Bank, including principal, interest, and fees.

---



**EXHIBIT A-4**

Cuzzcast Gourmet Gelato, LLC
Maggie A. Caster
Susan N. Cuzzo
October 9, 2020
Page 2

**Truist Bank Demands Payment**

Truist Bank demands that Borrower and Guarantors pay the debt owed under the Loan Documents. As of September 24, 2020, the aggregate outstanding balance of principal, accrued interest, and fees was $112,161.33. That amount excludes certain costs, expenses, and attorneys' fees recoverable under the Loan Documents. This amount excludes future interest charges, which continue to accrue daily. Borrower or Guarantors must pay the full balance owed under the Loan Documents on or before 4:00 p.m., Central Time, on **Friday, October 16, 2020**.

**Failure to Pay**

If you fail or refuse to pay the full amount owed before the indicated deadline, Truist Bank will seek recovery of all damages to which it is entitled under the Loan Documents, including the full outstanding balance plus attorneys' fees, costs, and expenses. Truist Bank may seek to (1) enforce payment of the debt to the fullest extent allowed by law, from Borrower or Guarantors individually; (2) commence non-judicial foreclosure proceedings to foreclose security interests existing under the Loan Documents; and (3) exercise any or all of the rights and remedies available to it under the Loan Documents. Truist Bank's decision to exercise any of these remedies does not limit or exclude any of Truist Bank's other cumulative rights or remedies.

Lastly, Truist Bank's acceptance of a partial payment or past-due amount will not constitute a waiver, modification, relinquishment, or forbearance by Truist Bank. Truist Bank expressly reserves all such rights and remedies, as well as those under the Loan Documents and applicable law.

Sincerely,

JOHNSTON CLEM GIFFORD PLLC

By: _____

Kenneth C. Johnston

KCJ/mm

172112v1 (10006.30188.00)

**App. 021**

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®.*

OFFICIAL USE

Certified Mail Fee
$
Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)     $ _____
☐ Return Receipt (electronic)    $ _____
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required      $ _____
☐ Adult Signature Restricted Delivery $ _____
Postage
$
Total Postage and Fees
$

Postmark
Here

Sent To   Susan Nicole Cuzzo
          2726 Riviera Drive
Street and Apt. No., or PO Box No.
          Garland, Texas 75040
City, State, ZIP+4®

7019 1120 0001 2071 2149

PS Form 3800, April 2015 PSN 7530-02-000-9047     See Reverse for Instructions

---

**U.S. Postal Service®**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®.*

OFFICIAL USE

Certified Mail Fee
$
Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)     $ _____
☐ Return Receipt (electronic)    $ _____
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required      $ _____
☐ Adult Signature Restricted Delivery $ _____
Postage
$
Total Postage and Fees   Maggie Ann Caster
$
Sent To   2726 Riviera Drive
          Garland, Texas 75040
Street and Apt. No., or PO Box No.

City, State, ZIP+4®

7019 1120 0001 2071 2156

PS Form 3800, April 2015 PSN 7530-02-000-9047     See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®.*

OFFICIAL USE

Certified Mail Fee
$
Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)     $ _____
☐ Return Receipt (electronic)    $ _____
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required      $ _____
☐ Adult Signature Restricted Delivery $ _____
Postage
$
Total Postage and Fees
$   CUZZCAST GOURMET GELATO, LLC
Sent To   3699 McKinney Avenue, Suite 101B
Street and Apt. No., or PO Box No.   Dallas, Texas 75204
City, State, ZIP+4®

7019 1120 0001 2071 2163

PS Form 3800, April 2015 PSN 7530-02-000-9047     See Reverse for Instructions

App. 022

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CUZZCAST GOURMET GELATO, LLI
3699 McKinney Avenue, Suite 101b
Dallas, Texas 75204

9590 9402 5306 9154 8528 42

2. Article Number *(Transfer from service label)*

7019 1120 0001 2071 2163

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*     C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
  (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt

**App. 023**



**CERTIFIED MAIL**



johnston
clem gifford

1717 Main Street, Ste. 3000
Dallas, Texas 75201




7019 1120 0001 2071 2149

Susan Nicole Cuzzo
2726 Riviera Drive
Garland, Texas 75040

LN
10/14/20

NIXIE       758   DE 1        0011/13
RETURN TO SENDER
UNCLAIMED
UNABLE TO FORWARD

_. 9400921882319180              UNC      BC: 75201433550      *0634-08587-
                         75201>4335
                   75040$4258 C066

---

johnston
clem gifford

1717 Main Street, Ste. 3000
Dallas, Texas 75201

**CERTIFIED MAIL**




7019 1120 0001 2071 2156

Maggie Ann Caster
2726 Riviera Drive
Garland, Texas 75040

LN
10-14-20

NIXIE       758   DE 1        0011/1
RETURN TO SENDER
UNCLAIMED
UNABLE TO FORWARD

         UNC      BC: 75201433550      *0634-08590-
         75201>4335
   75040$4258 C066

**App. 024**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| TRUIST BANK, | § | |
|     PLAINTIFF, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 3:20-CV-03607-X |
| CUZZCAST GOURMET GELATO, LLC, | § | |
| SUSAN N. CUZZO, AND MAGGIE A. CASTER | § | |
|     DEFENDANTS. | § | |

## TRUIST BANK'S FIRST SET OF COMBINED DISCOVERY REQUESTS
### TO DEFENDANT SUSAN N. CUZZO

To:    Susan N. Cuzzo, 2726 Riviera Drive, Garland, Texas 75040.

Pursuant to Rules 33, 34, and 36 of the Federal Rules of Civil Procedure, Truist Bank serves its First Set of Combined Discovery Requests ("Requests") to Defendant Susan N. Cuzzo.

Defendant must serve responses to each request in writing and produce all requested documents no later than 30 days after service of the Requests. Defendant is under a duty to timely supplement or correct her responses in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

**EXHIBIT B**

Respectfully submitted,

**JOHNSTON CLEM GIFFORD PLLC**

By: s/Ekaterina G. Long
    **Kenneth C. Johnston**
    Texas Bar No. 00792608
    kjohnston@johnstonclem.com
    **Ekaterina G. Long**
    Texas Bar No. 24102700
    klong@johnstonclem.com

**JOHNSTON CLEM GIFFORD PLLC**
1717 Main Street, Suite 3000
Dallas, Texas 75201
(214) 974-8000 Main
(972) 474-1727 K. Long Direct

***Attorneys for Truist Bank***

### Certificate of Service

I certify that a true and correct copy of this document was served on all parties via certified mail, return receipt requested and first-class mail, as authorized by Federal Rule of Civil Procedure 5(b)(2), on February 25, 2021, at the addresses below.

| | | |
|---|---|---|
| Cuzzcast Gourmet Gelato | Susan N. Cuzzo | Maggie A. Caster |
| c/o United States Corporation Agents, Inc. | 2726 Riviera Drive | 2726 Riviera Drive |
| 9900 Spectrum Drive | Garland, Texas 75040 | Garland, Texas 75040 |
| Austin, Texas 78717 | | |

By: s/Ekaterina G. Long
    **Ekaterina G. Long**

## I.    INSTRUCTIONS

1.    Unless otherwise stated, the relevant time-period for responding to the Requests is June 1, 2018 to the present.

2.    **Duty to Supplement:** Except as otherwise indicated in any specific Request, your initial response should include all responsive information reasonably available to you or your attorney at the time your response is made. These Requests are continuing in nature and you have a duty to supplement or correct your responses reasonably promptly after discovering the necessity to do so as stated in Rule 26(e) of the Federal Rules of Civil Procedure. Any information or document not disclosed prior to the commencement of trial in accordance with applicable law or court orders will be called to the attention of the Court and objected to.

3.    **Privilege or Work Product:** If you withhold any information or document based on a privilege or the work product doctrine, expressly make the claim and describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim as required by Fed. R. Civ. P. 26(b)(5).

4.    **"Describe" and "identify,"** when used regarding any natural person or persons, require that you state:

    a.    the full name of each person;
    b.    the present occupation, job title, and name of the person's present or last known employer and that employer's address; and
    c.    if such person was affiliated at any time with any party to this litigation, or with any affiliate with any party to this litigation, by employment or otherwise, state the nature (including, where applicable, any job title) and dates of such affiliation.

7.    **"Describe" and "identify,"** when used in reference to any entity other than a natural person, require you to state:

    a.    the full name and any name under which it does business, and present or last known address(es) and telephone number(s) of the principal place of business for the entities to be identified;
    b.    the person or persons who own, operate, and control the business; and
    c.    the officer(s), employee(s), or agent(s) most closely connected with the subject matter of the interrogatory, and the person who is responsible for supervising the identified officer(s), employee(s), or agent(s).

8.    **"Describe" and "identify,"** when used in reference to documents, require that you:

    a.    specify the nature of the document (e.g., whether it is letter, facsimile, electronic communication, memorandum, telegram, invoice, handwritten notes, etc.);
    b.    state the date, if any, appearing on the document or, if it is undated, the date on which the document was prepared or transmitted;

      c.      specify any uniquely descriptive information (e.g., any Bates number(s) and document control number(s)); and

      d.      describe, in general, the subject matter of the document(s).

9.     **"Describe" and "identify,"** when used in reference to communications, require that you state:

      a.      the date(s) and time(s) of each communication;

      b.      the method of communication (e.g., oral, telephone, e-mail, facsimile, writing, etc.);

      c.      all persons who heard, received, reviewed, or participated in the communication; and

      d.      the contents of the communication and by whom it was communicated, whether written, typed, sent, or otherwise communicated.

10.    **Electronic and Magnetic Data:** These requests expressly seek electronically stored information.

11.    **Method of Production:** You are requested to produce electronic or magnetic data in its native or original format included along with any associated metadata reflecting the content, quality, condition, history and other characteristics of the underlying data. By way of example email may be produced in .pst or .nsf format. If documents, such as electronic mail, are produced, they must be produced in a form so that the relationship between related electronic documents (e.g., email attachments) is preserved and reflected in the production.

12.    **Manner of Production:** You are requested to produce the documents responsive to these requests as they are kept in the usual course of business, or to organize and label them to correspond with the categories specified below.

13.    **Avoiding Motion Practice:** Truist Bank's counsel will discuss with Defendants' counsel any questions regarding perceived ambiguities in the Requests to resolve any issues to obviate the need to seek court intervention.

14.    **Interpretation:** For the purposes of interpreting these Requests, all terms shall be given their most expansive and inclusive interpretation unless otherwise specifically limited by the language of an individual Request. This includes, without limitation: "And" shall include "or" and vice versa; "each" shall include "every" and vice versa; the singular shall include the plural and the plural shall include the singular. Defined terms retain their meaning regardless of capitalization. A verb tense includes all other verb tenses where the clear meaning is not distorted by addition of another tense or tenses. A masculine, feminine, or neuter pronoun shall not exclude the other gender. "All" means all or any. "Any" means any or all.

## II.  DEFINITIONS

1.     **"Borrower's Certification"** means Cuzzcast's certification to induce Truist Bank to make a U.S. Small Business Administration guaranteed loan, SBA Loan Number 26888270-00, dated June 21, 2018, that Susan N. Cuzzo and Maggie A. Caster executed as Cuzzcast's managing members in Truist Bank's favor.

2.     **"Collateral"** has the definition set forth in the Security Agreement and includes all inventory, chattel paper, accounts, instruments, equipment, trade fixtures, and general intangibles.

3.     **"Communication"** shall mean any contact, transmission, or exchange of information between two or more persons, whether oral or written, and including but not limited to, any conversation or discussion, whether by chance or prearranged, formal or informal, face to face, or by telephone, telegraph, telex, telecopier, electronic methods, email, social media, "chat" programs, text messages, or other media.

4.     **"Concern," "concerning," "evidencing," "relate," "regarding," "related," or "relating to"** mean, in addition to their usual and customary meanings, referring to, reflecting, regarding, pertaining to, addressing, discussing, alluding to, describing, constituting, or otherwise having any logical or factual connection with the subject matter addressed.

5.     **"Complaint"** means Truist Bank's Original Complaint filed in Civil Action No. 3:20-cv-03607-X styled *Truist Bank v. Cuzzcast Gourmet Gelato, LLC, Susan N. Cuzzo, and Maggie A. Caster* in the United States District Court for the Northern District, Dallas Division, Texas.

6.     **"Cuzzcast"** means Cuzzcast Gourmet Gelato, LLC d/b/a Paciugo Gelato and Caffe and any of its predecessors, successors, affiliates, parents, and its officers, directors, agents, employees, representatives, and any others acting or purporting to act on its behalf.

7.     **"Demand"** means Notice of Default and Acceleration and Demand for Payment that Truist Bank mailed to Defendants Cuzzcast, Susan N. Cuzzo, and Maggie A. Caster on October 9, 2020, requesting them to repay the Note.

8.     **"Document" or "documents"** means any written, typed or printed matter and all magnetic or other media or documentation of any kind or description in the custody, constructive custody, possession or control of the responding party or known to responding party whether printed, typewritten, recorded, reproduced by any process, or written or produced by hand, including but not limited to: letters, reports, affidavits, agreements, contracts, opinions, estimates, notes, communications (including intra-company communications), electronic mail, correspondence, telegrams, teletypes, memoranda, summaries or records of personal conversations, calendars, diaries, forecasts, video tapes, photographs, tape recordings, models, statistical statements, charts, graphs, laboratory and engineering minutes or records of conferences, lists of persons attending meetings or conferences, reports and/or summaries of interviews, reports of consultants, appraisals, records, reports or summaries of negotiations, books, brochures, microfilms, pamphlets, advertisements, circulars, trade letters, press releases, bills, statements, vouchers, banking records, check books, check registers, guaranty agreements, financial statements, manuals, minute books, social media posts, electronic "chat" or "instant message(s)," text messages, drafts of any documents, revisions of drafts of any document, invoices, receipts and original or preliminary notes. Any comment or notation

appearing on any documents, and not a part of the original text, is to be considered a separate "document."

9.  **"Guaranty Addendum"** means the Addendum to the Note dated June 22, 2018 and which Defendants Susan N. Cuzzo and Maggie A. Caster executed as Cuzzcast's managing members in favor of Truist Bank.

10.  **"Lawsuit"** means Truist Bank's Original Complaint filed in Civil Action No. 3:20-cv-03607-X styled *Truist Bank v. Cuzzcast Gourmet Gelato, LLC, Susan N. Cuzzo, and Maggie A. Caster* in the United States District Court for the Northern District, Dallas Division, Texas.

11.  **"Loan"** means the $153,000 business loan from Truist Bank to Cuzzcast as evidenced by the Note.

12.  **"Loan Documents"** collectively means (i) the Note; (ii) the Guaranty Addendum; (iii) the Borrower's Certification; (iv) Susan N. Cuzzo Commercial Guaranty; (v) Maggie A. Caster Commercial Guaranty; and (vi) Security Agreement.

13.  **"Maggie A. Caster Commercial Guaranty"** means the Commercial Guaranty dated June 22, 2018 that Defendant Maggie A. Caster signed in favor of Truist Bank to personally guarantee the Note.

14.  **"Managing Member"** means title and function of an owner, chief executive officer, chief financial officer, officer, director, manager, or other governing person.

15.  **"Note"** means the $153,000 business loan from Truist Bank to Cuzzcast as evidenced by the Promissory Note dated June 22, 2018 in the original principal amount of $153,000 that Defendants Susan N. Cuzzo and Maggie A. Caster executed as Cuzzcast's managing members in favor of Truist Bank.

16.  **"Person"** means any natural person, corporation, firm, association, partnership, joint venture, proprietorship, governmental body, or any other organization, business, or legal entity, and all predecessors or successors in interest.

17.  **"Security Agreement"** means the Commercial Security Agreement that Defendants Susan N. Cuzzo and Maggie A. Caster executed as managing members of Cuzzcast in favor of Truist Bank to secure the indebtedness under the Note.

18.  **"Susan N. Cuzzo Commercial Guaranty"** means the Commercial Guaranty dated June 22, 2018 that Defendant Susan N. Cuzzo signed in favor of Truist Bank to personally guarantee the Note.

19.  **"Truist Bank," "Plaintiff," and "Branch Banking and Trust Company"** mean Truist Bank and its predecessors-in-interest, agents, employees, attorneys, representatives, and individuals acting or authorized in any manner whatsoever to act on its behalf.

20.  **"You," "Your, "Yours," "you," "your," or "yours"** means Defendant Susan N. Cuzzo, whether in her personal capacity or as an officer or agent of any entity.

21.    A request for documents or communications **"relating to," "evidencing," or "regarding"** a certain subject shall mean the requested document or communication constitutes, contains, embodies, evinces, comprises, reflects, identifies, states, refers to, deals with, comments on, responds to, describes, involves or is any way pertinent to that certain subject.

## III.    REQUESTS FOR ADMISSION

**Request for Admission No. 1:**      Admit that your name is Susan N. Cuzzo.

**Request for Admission No. 2:**      Admit that **Exhibit 1** is a true and correct copy of the Note.

**Request for Admission No. 3:**      Admit that **Exhibit 2** is a true and correct copy of the Susan N. Cuzzo Commercial Guaranty.

**Request for Admission No. 4:**      Admit that **Exhibit 3** is a true and correct copy of the Addendum to the Note.

**Request for Admission No. 5:**      Admit that **Exhibit 4** is a true and correct copy of the Security Agreement.

**Request for Admission No. 6:**      Admit that **Exhibit 5** is a true and correct copy of the Borrower's Certification.

**Request for Admission No. 7:**      Admit that **Exhibit 6** is a true and correct copy of the Demand Letter.

**Request for Admission No. 8:**      Admit that you were one of Cuzzcast's managing members on June 22, 2018.

**Request for Admission No. 9:**      Admit that Cuzzcast borrowed the Loan proceeds.

**Request for Admission No. 10:**      Admit that Cuzzcast borrowed $153,000 from Truist Bank on or about June 22, 2018.

**Request for Admission No. 11:**      Admit that you signed the Note.

**Request for Admission No. 12:**      Admit that the Note is enforceable.

**Request for Admission No. 13:**     Admit that you signed the Susan N. Cuzzo Commercial Guaranty.

**Request for Admission No. 14:**     Admit that the Susan N. Cuzzo Commercial Guaranty is enforceable.

**Request for Admission No. 15:**     Admit that you "absolutely and unconditionally guarantee[d] full and punctual payment and satisfaction of [Cuzzcast's] indebtedness" to Truist Bank as evidenced by the Susan N. Cuzzo Commercial Guaranty.

**Request for Admission No. 16:**     Admit that you signed the Guaranty Addendum.

**Request for Admission No. 17:**     Admit that the Guaranty Addendum is enforceable.

**Request for Admission No. 18:**     Admit that Cuzzcast entered into the Security Agreement.

**Request for Admission No. 19:**     Admit that you signed the Security Agreement.

**Request for Admission No. 20:**     Admit that the Security Agreement is enforceable.

**Request for Admission No. 21:**      Admit that the Collateral is still in your possession or control.

**Request for Admission No. 22:**     Admit that Cuzzcast failed to repay all money borrowed under the Loan.

**Request for Admission No. 23:**     Admit that you have not repaid Truist Bank all money Cuzzcast borrowed under the Loan.

**Request for Admission No. 24:**     Admit that you received the Demand.

**Request for Admission No. 25:**     Admit that you signed the Borrower's Certification.

**Request for Admission No. 26:**     Admit that you answered each of the preceding requests for admission as truthfully as you would have done under oath.

## IV.    REQUESTS FOR PRODUCTION

You are requested to produce all non-privileged documents relating to the following categories of documents:

**Request for Production No. 1:**     All documents that you relied upon in responding to these Requests.

**Request for Production No. 2:**     All agreements between you and Truist Bank.

**Request for Production No. 3:**     All agreements between you and Cuzzcast.

**Request for Production No. 4:**     All documents concerning payments you, Cuzzcast, or anyone else made to Truist Bank pursuant to the Note, Susan N. Caster Commercial Guaranty, or Maggie A. Caster Commercial Guaranty.

**Request for Production No. 5:**     All documents relating to money you owe to Truist Bank.

**Request for Production No. 6:**     All documents relating to money Cuzzcast owes to Truist Bank.

**Request for Production No. 7:**     All communications between you and Defendant Maggie A. Caster relating to obligations you, Defendant Maggie A. Caster, or Cuzzcast owe or owed to Truist Bank.

**Request for Production No. 8:**     All communications between you and Defendant Maggie A. Caster relating to money owed to Truist Bank.

## V.    INTERROGATORIES

**Interrogatory No. 1:**    Identify all names and addresses you have used in the last five years.

**Interrogatory No. 2:**    Identify all agreements between you and Truist Bank.

**Interrogatory No. 3:**    State all reasons for your failure to repay all money due under the Note and Susan N. Cuzzo Commercial Guaranty.

**Interrogatory No. 4:**    Identify all payments either Cuzzcast, you, or Defendant Maggie A. Caster made to Truist Bank to repay money due under the Note, Susan N. Cuzzo Commercial Guaranty, or Maggie A. Caster Commercial Guaranty.

**Interrogatory No. 5:**    Identify all persons and entities you believe should be added as proper parties to this Lawsuit but which are not named as parties in the Complaint and the reasons you believe those persons or entities should be added.

**Interrogatory No. 6:**    Describe the status of the Collateral, including the physical address where it is located, and identify persons or entities who have control or possession of the Collateral and the reasons underlying these persons' or entities' possession or control.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| TRUIST BANK, | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 3:20-CV-03607-X |
| CUZZCAST GOURMET GELATO, LLC, | § | |
| SUSAN N. CUZZO, AND MAGGIE A. CASTER | § | |
| DEFENDANTS. | § | |

## TRUIST BANK'S FIRST SET OF COMBINED DISCOVERY REQUESTS TO DEFENDANT MAGGIE A. CASTER

To:     Maggie A. Caster, 2726 Riviera Drive, Garland, Texas 75040.

Pursuant to Rules 33, 34, and 36 of the Federal Rules of Civil Procedure, Truist Bank serves its First Set of Combined Discovery Requests ("Requests") to Defendant Maggie A. Caster.

Defendant must serve responses to each request in writing and produce all requested documents no later than 30 days after service of the Requests. Defendant is under a duty to timely supplement or correct her responses in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

**EXHIBIT C**

Respectfully submitted,

**JOHNSTON CLEM GIFFORD PLLC**

By: s/Ekaterina G. Long
    **Kenneth C. Johnston**
    Texas Bar No. 00792608
    kjohnston@johnstonclem.com
    **Ekaterina G. Long**
    Texas Bar No. 24102700
    klong@johnstonclem.com

**JOHNSTON CLEM GIFFORD PLLC**
1717 Main Street, Suite 3000
Dallas, Texas 75201
(214) 974-8000 Main
(972) 474-1727 K. Long Direct

*Attorneys for Truist Bank*

**Certificate of Service**

    I certify that a true and correct copy of this document was served on all parties via certified mail, return receipt requested and first-class mail, as authorized by Federal Rule of Civil Procedure 5(b)(2), on February 25, 2021, at the addresses below.

| | | |
|---|---|---|
| Cuzzcast Gourmet Gelato<br>c/o United States Corporation Agents, Inc.<br>9900 Spectrum Drive<br>Austin, Texas 78717 | Susan N. Cuzzo<br>2726 Riviera Drive<br>Garland, Texas 75040 | Maggie A. Caster<br>2726 Riviera Drive<br>Garland, Texas 75040 |

By: s/Ekaterina G. Long
    **Ekaterina G. Long**

## I.   INSTRUCTIONS

1.      Unless otherwise stated, the relevant time-period for responding to the Requests is June 1, 2018 to the present.

2.      **Duty to Supplement:** Except as otherwise indicated in any specific Request, your initial response should include all responsive information reasonably available to you or your attorney at the time your response is made. These Requests are continuing in nature and you have a duty to supplement or correct your responses reasonably promptly after discovering the necessity to do so as stated in Rule 26(e) of the Federal Rules of Civil Procedure. Any information or document not disclosed prior to the commencement of trial in accordance with applicable law or court orders will be called to the attention of the Court and objected to.

3.      **Privilege or Work Product:** If you withhold any information or document based on a privilege or the work product doctrine, expressly make the claim and describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim as required by Fed. R. Civ. P. 26(b)(5).

4.      **"Describe" and "identify,"** when used regarding any natural person or persons, require that you state:

    a.   the full name of each person;
    b.   the present occupation, job title, and name of the person's present or last known employer and that employer's address; and
    c.   if such person was affiliated at any time with any party to this litigation, or with any affiliate with any party to this litigation, by employment or otherwise, state the nature (including, where applicable, any job title) and dates of such affiliation.

7.      **"Describe" and "identify,"** when used in reference to any entity other than a natural person, require you to state:

    a.   the full name and any name under which it does business, and present or last known address(es) and telephone number(s) of the principal place of business for the entities to be identified;
    b.   the person or persons who own, operate, and control the business; and
    c.   the officer(s), employee(s), or agent(s) most closely connected with the subject matter of the interrogatory, and the person who is responsible for supervising the identified officer(s), employee(s), or agent(s).

8.      **"Describe" and "identify,"** when used in reference to documents, require that you:

    a.   specify the nature of the document (e.g., whether it is letter, facsimile, electronic communication, memorandum, telegram, invoice, handwritten notes, etc.);
    b.   state the date, if any, appearing on the document or, if it is undated, the date on which the document was prepared or transmitted;

c.  specify any uniquely descriptive information (e.g., any Bates number(s) and document control number(s)); and

d.  describe, in general, the subject matter of the document(s).

9.  **"Describe" and "identify,"** when used in reference to communications, require that you state:

a.  the date(s) and time(s) of each communication;

b.  the method of communication (e.g., oral, telephone, e-mail, facsimile, writing, etc.);

c.  all persons who heard, received, reviewed, or participated in the communication; and

d.  the contents of the communication and by whom it was communicated, whether written, typed, sent, or otherwise communicated.

10.  **Electronically Stored Information:** These requests expressly seek electronically stored information.

11.  **Method of Production:** You are requested to produce electronic or magnetic data in its native or original format included along with any associated metadata reflecting the content, quality, condition, history and other characteristics of the underlying data. By way of example email may be produced in .pst or .nsf format. If documents, such as electronic mail, are produced, they must be produced in a form so that the relationship between related electronic documents (e.g., email attachments) is preserved and reflected in the production.

12.  **Manner of Production:** You are requested to produce the documents responsive to these requests as they are kept in the usual course of business, or to organize and label them to correspond with the categories specified below.

13.  **Avoiding Motion Practice:** Truist Bank's counsel will discuss with Defendants' counsel any questions regarding perceived ambiguities in the Requests to resolve any issues to obviate the need to seek court intervention.

14.  **Interpretation:** For the purposes of interpreting these Requests, all terms shall be given their most expansive and inclusive interpretation unless otherwise specifically limited by the language of an individual Request. This includes, without limitation: "And" shall include "or" and vice versa; "each" shall include "every" and vice versa; the singular shall include the plural and the plural shall include the singular. Defined terms retain their meaning regardless of capitalization. A verb tense includes all other verb tenses where the clear meaning is not distorted by addition of another tense or tenses. A masculine, feminine, or neuter pronoun shall not exclude the other gender. "All" means all or any. "Any" means any or all.

## II.  DEFINITIONS

1.      **"Borrower's Certification"** means Cuzzcast's certification to induce Truist Bank to make a U.S. Small Business Administration guaranteed loan, SBA Loan Number 26888270-00, dated June 21, 2018, that Susan N. Cuzzo and Maggie A. Caster executed as Cuzzcast's managing members in Truist Bank's favor.

2.      **"Collateral"** has the definition set forth in the Security Agreement and includes all inventory, chattel paper, accounts, instruments, equipment, trade fixtures, and general intangibles.

3.      **"Communication"** shall mean any contact, transmission, or exchange of information between two or more persons, whether oral or written, and including but not limited to, any conversation or discussion, whether by chance or prearranged, formal or informal, face to face, or by telephone, telegraph, telex, telecopier, electronic methods, email, social media, "chat" programs, text messages, or other media.

4.      **"Concern," "concerning," "evidencing," "relate," "regarding," "related," or "relating to"** mean, in addition to their usual and customary meanings, referring to, reflecting, regarding, pertaining to, addressing, discussing, alluding to, describing, constituting, or otherwise having any logical or factual connection with the subject matter addressed.

5.      **"Complaint"** means Truist Bank's Original Complaint filed in Civil Action No. 3:20-cv-03607-X styled *Truist Bank v. Cuzzcast Gourmet Gelato, LLC, Susan N. Cuzzo, and Maggie A. Caster* in the United States District Court for the Northern District, Dallas Division, Texas.

6.      **"Cuzzcast"** means Cuzzcast Gourmet Gelato, LLC d/b/a Paciugo Gelato and Caffe and any of its predecessors, successors, affiliates, parents, and its officers, directors, agents, employees, representatives, and any others acting or purporting to act on its behalf.

7.      **"Demand"** means Notice of Default and Acceleration and Demand for Payment that Truist Bank mailed to Defendants Cuzzcast, Susan N. Cuzzo, and Maggie A. Caster on October 9, 2020, requesting them to repay the Note.

8.      **"Document" or "documents"** means any written, typed or printed matter and all magnetic or other media or documentation of any kind or description in the custody, constructive custody, possession or control of the responding party or known to responding party whether printed, typewritten, recorded, reproduced by any process, or written or produced by hand, including but not limited to: letters, reports, affidavits, agreements, contracts, opinions, estimates, notes, communications (including intra-company communications), electronic mail, correspondence, telegrams, teletypes, memoranda, summaries or records of personal conversations, calendars, diaries, forecasts, video tapes, photographs, tape recordings, models, statistical statements, charts, graphs, laboratory and engineering minutes or records of conferences, lists of persons attending meetings or conferences, reports and/or summaries of interviews, reports of consultants, appraisals, records, reports or summaries of negotiations, books, brochures, microfilms, pamphlets, advertisements, circulars, trade letters, press releases, bills, statements, vouchers, banking records, check books, check registers, guaranty agreements, financial statements, manuals, minute books, social media posts, electronic "chat" or "instant message(s)," text messages, drafts of any documents, revisions of drafts of any document, invoices, receipts and original or preliminary notes. Any comment or notation

appearing on any documents, and not a part of the original text, is to be considered a separate "document."

9.        **"Guaranty Addendum"** means the Addendum to the Note dated June 22, 2018 and which Defendants Susan N. Cuzzo and Maggie A. Caster executed as Cuzzcast's managing members in favor of Truist Bank.

10.        **"Lawsuit"** means Truist Bank's Original Complaint filed in Civil Action No. 3:20-cv-03607-X styled *Truist Bank v. Cuzzcast Gourmet Gelato, LLC, Susan N. Cuzzo, and Maggie A. Caster* in the United States District Court for the Northern District, Dallas Division, Texas.

11.        **"Loan"** means the $153,000 business loan from Truist Bank to Cuzzcast as evidenced by the Note.

12.        **"Loan Documents"** collectively means (i) the Note; (ii) the Guaranty Addendum; (iii) the Borrower's Certification; (iv) Susan N. Cuzzo Commercial Guaranty; (v) Maggie A. Caster Commercial Guaranty; and (vi) Security Agreement.

13.        **"Maggie A. Caster Commercial Guaranty"** means the Commercial Guaranty dated June 22, 2018 that Defendant Maggie A. Caster signed in favor of Truist Bank to personally guarantee the Note.

14.        **"Managing Member"** means title and function of an owner, chief executive officer, chief financial officer, officer, director, manager, or other governing person.

15.        **"Note"** means the $153,000 business loan from Truist Bank to Cuzzcast as evidenced by the Promissory Note dated June 22, 2018 in the original principal amount of $153,000 that Defendants Susan N. Cuzzo and Maggie A. Caster executed as Cuzzcast's managing members in favor of Truist Bank.

16.        **"Person"** means any natural person, corporation, firm, association, partnership, joint venture, proprietorship, governmental body, or any other organization, business, or legal entity, and all predecessors or successors in interest.

17.        **"Security Agreement"** means the Commercial Security Agreement that Defendants Susan N. Cuzzo and Maggie A. Caster executed as managing members of Cuzzcast in favor of Truist Bank to secure the indebtedness under the Note.

18.        **"Susan N. Cuzzo Commercial Guaranty"** means the Commercial Guaranty dated June 22, 2018 that Defendant Susan N. Cuzzo signed in favor of Truist Bank to personally guarantee the Note.

19.        **"Truist Bank," "Plaintiff,"** and **"Branch Banking and Trust Company"** means Truist Bank and its predecessors-in-interest, agents, employees, attorneys, representatives, and individuals acting or authorized in any manner whatsoever to act on its behalf.

20.        **"You," "Your, "Yours," "you," "your," or "yours"** mean Defendant Maggie A. Caster whether in her personal capacity or as an officer or agent of any entity.

21.     A request for documents or communications **"relating to," "evidencing," or "regarding"** a certain subject shall mean the requested document or communication constitutes, contains, embodies, evinces, comprises, reflects, identifies, states, refers to, deals with, comments on, responds to, describes, involves or is any way pertinent to that certain subject.

### III.   REQUESTS FOR ADMISSION

**Request for Admission No. 1:**          Admit that your name is Maggie A. Caster.

**Request for Admission No. 2:**          Admit that **Exhibit 1** is a true and correct copy of the Note.

**Request for Admission No. 3:**          Admit that **Exhibit 2** is a true and correct copy of the Maggie A. Caster Commercial Guaranty.

**Request for Admission No. 4:**          Admit that **Exhibit 3** is a true and correct copy of the Addendum to Note.

**Request for Admission No. 5:**          Admit that **Exhibit 4** is a true and correct copy of the Security Agreement.

**Request for Admission No. 6:**          Admit that **Exhibit 5** is a true and correct copy of the Borrower's Certification.

**Request for Admission No. 7:**          Admit that **Exhibit 6** is a true and correct copy of the Demand Letter.

**Request for Admission No. 8:**          Admit that you were one of Cuzzcast's managing members on June 22, 2018.

**Request for Admission No. 9:**          Admit that Cuzzcast borrowed the Loan proceeds.

**Request for Admission No. 10:**          Admit that Cuzzcast borrowed $153,000 from Truist Bank on or about June 22, 2018.

**Request for Admission No. 11:**          Admit that you signed the Note.

**Request for Admission No. 12:**          Admit that the Note is enforceable.

**Request for Admission No. 13:**          Admit that you signed the Maggie A. Caster Commercial Guaranty.

**Request for Admission No. 14:**          Admit that the Maggie A. Caster Commercial Guaranty is enforceable.

**Request for Admission No. 15:**    Admit that you "absolutely and unconditionally guarantee[d] full and punctual payment and satisfaction of [Cuzzcast's] indebtedness" to Truist Bank as evidenced by the Maggie A. Caster Commercial Guaranty.

**Request for Admission No. 16:**    Admit that you signed the Guaranty Addendum.

**Request for Admission No. 17:**    Admit that the Guaranty Addendum is enforceable.

**Request for Admission No. 18:**    Admit that Cuzzcast entered into the Security Agreement.

**Request for Admission No. 19:**    Admit you signed the Security Agreement.

**Request for Admission No. 20:**    Admit that the Security Agreement is enforceable.

**Request for Admission No. 21:**     Admit that the Collateral is still in your possession or control.

**Request for Admission No. 22:**    Admit that Cuzzcast failed to repay all money borrowed under the Loan.

**Request for Admission No. 23:**    Admit that you have not repaid Truist Bank all money Cuzzcast borrowed under the Loan.

**Request for Admission No. 24:**    Admit that you received the Demand.

**Request for Admission No. 25:**    Admit that you signed the Borrower's Certification.

**Request for Admission No. 26:**    Admit that you answered each of the preceding requests for admission as truthfully as you would have done under oath.

## IV.    REQUESTS FOR PRODUCTION

You are requested to produce all non-privileged documents relating to the following categories of documents:

**Request for Production No. 1:**      All documents that you relied upon in responding to these Requests.

**Request for Production No. 2:**      All agreements between you and Truist Bank.

**Request for Production No. 3:**      All agreements between you and Cuzzcast.

**Request for Production No. 4:**      All documents concerning payments you, Cuzzcast, or anyone else made to Truist Bank pursuant to the Note, Susan N. Caster Commercial Guaranty, or Maggie A. Caster Commercial Guaranty.

**Request for Production No. 5:**      All documents relating to money you owe to Truist Bank.

**Request for Production No. 6:**      All documents relating to money Cuzzcast owes to Truist Bank.

**Request for Production No. 7:**      All communications between you and Defendant Susan N. Cuzzo relating to obligations you, Defendant Susan N. Cuzzo, or Cuzzcast owe or owed to Truist Bank.

**Request for Production No. 8:**      All communications between you and Defendant Susan N. Cuzzo relating to money owed to Truist Bank.

**Request for Production No. 9:**      All communications between you and any third party relating to money owed to Truist Bank pursuant to the Loan Documents.

**Request for Production No. 10:**     All communications between Cuzzcast and Truist Bank relating to money owed to Truist Bank pursuant to the Loan Documents.

## V.   INTERROGATORIES

**Interrogatory No. 1:**      Identify all names and addresses you have used in the last five years.

**Interrogatory No. 2:**      Identify all agreements between you and Truist Bank.

**Interrogatory No. 3:**      State all reasons for your failure to repay all money due under the Note and Maggie A. Caster Commercial Guaranty.

**Interrogatory No. 4:**      Identify all payments either Cuzzcast, you, or Defendant Susan N. Cuzzo made to Truist Bank to repay money due under the Note, Susan N. Cuzzo Commercial Guaranty, or Maggie A. Caster Commercial Guaranty.

**Interrogatory No. 5:**      Identify all persons and entities you believe should be added as proper parties to this Lawsuit but which are not named as parties in the Complaint and the reasons you believe those persons or entities should be added.

**Interrogatory No. 6:**      Describe the status of the Collateral, including the physical address where it is located, and identify persons or entities who have control or possession of the Collateral and the reasons underlying these persons' or entities' possession or control.

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| TRUIST BANK | § | |
|     PLAINTIFF | § | |
| | § | |
| v. | § | CASE NO. 3:20-CV-03607-X |
| | § | |
| CUZZCAST GOURMET GELATO, LLC, | § | |
| SUSAN N. CUZZO, & MAGGIE A. CASTER | § | |
|     DEFENDANTS | § | |

## DECLARATION OF EKATERINA G. LONG

Pursuant to 28 U.S.C. § 1746, I, Ekaterina G. Long, declare:

1.    "I am over 18 years of age and reside in the State of Texas. I have never been convicted of any felony or other crime involving moral turpitude. I am fully competent to make this declaration.

2.    I have personal knowledge of the facts set forth in this declaration and the facts are true and correct.

3.    I am an associate with the law firm of Johnston Clem Gifford PLLC (the "Firm"), located at 1717 Main Street, Suite 3000, Dallas, Texas 75201. The Firm represents Truist Bank, formerly known as Branch Banking and Trust Company, in this action. Truist Bank has agreed to pay the Firm for professional services and costs at agreed-upon hourly rates.

### Experience of Truist Bank's Legal Team

I performed the work described in this declaration with the supervision of Kenneth C. Johnston, partner at the Firm, and the support of Mary Mendoza, paralegal at the Firm.

#### Ekaterina G. Long

4.    I graduated from the SMU Dedman School of Law in 2016 and have been licensed to practice in Texas since then. I am a member in good standing with the State Bar of Texas. I have dedicated my career to being a commercial litigation lawyer and have litigated commercial debt cases involving contract and guaranty claims. My standard rate for 2021 is $315 per hour, but the Firm has negotiated volume discounts for Truist Bank as part of a preferred counsel relationship reducing my rate in this matter to $252 per hour.

#### Kenneth C. Johnston

5.    Mr. Johnston graduated from the University of Mississippi with a Juris Doctor degree in 1991. He has been licensed to practice law in Texas since 1995. Mr. Johnston is a member in good standing with the State Bar of Texas. He has spent his career as a commercial litigation lawyer, representing financial services companies to litigate cases like this one involving commercial debt,

**EXHIBIT D**

financing arrangements, and contract and guaranty claims. Mr. Johnston's standard rate for 2021 is $575, but the Firm has negotiated volume discounts for Truist Bank reducing his rate in this matter to $402 per hour.

### Mary Mendoza

6.      Ms. Mendoza is a senior paralegal. She has significant experience in business and corporate litigation, financial services, and litigation support. The work she performed was not clerical in nature. Mr. Johnston and I supervised her legal work. Ms. Mendoza's standard rate for 2021 is $250, but the Firm has negotiated volume discounts for Truist Bank reducing her rate in this matter to $173. per hour

### Case Records

7.      As an attorney practicing in the commercial litigation and financial services sections of the Firm, I am one of the custodians of records for the Firm's litigation matters. The Firm keeps the records I identify in this declaration in the regular course of business. A person with knowledge of the act, event, condition, or opinion made these records at or near the time, or reasonably soon after, the act, event, or condition occurred or opinion was made. The records I identify in this declaration—except for limited redactions to protect confidential information—are the originals or exact duplicates of the originals.

### Truist Bank Sued Cuzzcast Gourmet Gelato, LLC To Recover on The Loan

8.      On December 9, 2020, Truist Bank filed its Original Complaint in the United States District Court for the Northern District of Texas, Dallas Division, against Cuzzcast Gourmet Gelato, LLC, Susan N. Cuzzo, and Maggie A. Caster ("Defendants").[1] Truist Bank has sued Defendants to recover the monetary loss it sustained because of Defendants' failure to repay a secured loan to Truist Bank.

### Hours Worked & Fees Incurred

9.      The Firm worked 112.3 hours on this matter. That work includes, among others: (a) review and analysis of the loan documents to confirm default and identify any issues affecting the status of Truist Bank's loan; (b) corresponding with bank personnel regarding the basis and status of the claim and status of pre-litigation and litigation endeavors; (c) preparing the notice of default and acceleration and demand for payment and related communications to Defendants; (d) writing, filing, and serving the original complaint; (e) obtaining service on Defendants; and (f) writing, revising, and filing the motion for summary judgment.

10.      The work can be segregated by reference to the ABA's litigation codes: L110 (fact investigation/development); L120 (analysis & strategy); L210 (pleadings); L240 (dispositive motions); L250 (other written motions and submissions); and L310 (written discovery).

---

[1] Dkt. 1.

11.     The below chart reflects the hours I describe above, multiplied by the rates the Firm charges for each professional. The chart reflects both billed and unbilled time. The unbilled time is "work in progress" mostly related to the motion for summary judgment and is yet to be invoiced.

| ABA LITIGATION CODES | KCJ | EGL | MTM | TOTALS |
|---|---|---|---|---|
| L100 | 0.3 | | | 0.3 |
| L110 | 0.4 | | 3.5 | 3.9 |
| L120 | 2.8 | 28.96 | 0.7 | 32.46 |
| L190 | | | 0.1 | 0.1 |
| L210 | 1.8 | | 18.1 | 19.9 |
| L220 | 0.3 | | | 0.3 |
| L240 | 1.7 | 14.6 | 12.6 | 28.9 |
| L250 | 1.2 | | | 1.2 |
| L310 | 0.77 | | 6.4 | 7.17 |
| TOTAL | 9.27 | 43.56 | 41.4 | 94.23 |
| RATE | $402.00 | $252.00 | $173.00 | |

### The Hours Worked Are Reasonable

12.     The Firm appropriately staffed this case, and the hours the Firm worked on this matter are reasonable. As a junior attorney, I work at a lower billable rate. I performed most of the work related to the pleadings and the motion for summary judgment. Mr. Johnston worked mostly on reviewing and supervising my work on the matter. Ms. Mendoza supported the pleadings work by finalizing the complaint and coordinating service efforts. She also wrote initial drafts of declarations and performed critical work in support of the motion for summary judgment, including review and redactions to the exhibits. The work on the motion for summary judgment took a reasonable amount of time and represents a sensible use of resources.

13.     The work related to this declaration is also reasonable, as it included a detailed review of billing entries and other drafting to ensure compliance with the Texas Supreme Court's *Rohrmoos Venture* decision.

14.     The work performed on the motion for summary judgment is reasonable and necessary to dispose of this case because Truist Bank has an obligation to pursue its case diligently and because liability and damages are established beyond dispute. It is my professional opinion that the hours the Firm spent in creating and finalizing the motion for summary judgment were reasonable and necessary to enforce Truist Bank's rights in this case.

*The Hourly Rates Charged Are Reasonable*

15.      I am familiar with the amount of legal work necessary in prosecuting cases like this. Regarding the subject matter of the case, as I explain above, I am a career commercial litigator and I have focused almost exclusively on representing financial institutions. Regarding customary rates, I began my legal career in Dallas County in 2016. Through my own practice, I am aware of the fees commonly charged in Dallas County for the kind of legal services rendered in this case.

16.      Based on my experience in the Dallas County legal market and, specifically, the market for complex commercial litigation counsel, the rates the Firm charges for Mr. Johnston's and my work are equal to or less than of the peer attorneys who have similar education, work background, and experience, and who perform similar work for clients in similar cases. Clients pay our hourly billable rate.

17.      Based on my experience in the Dallas County legal market and, specifically, the market for complex commercial litigation counsel, the rate the Firm charges for Ms. Mendoza's work is reasonable and equal to or less than of the peer paralegals who have similar experience and skills. Clients pay her hourly billable rate.

*The Total Fee Amount Is Reasonable*

18.      The amount of work necessary to pursue the claims in this case was reasonable. The case proceeded in three stages. First, the Firm began its efforts pre-suit, seeking an amicable resolution to the matter and expecting that Defendants would honor their agreements. Second, when those efforts failed, the Firm filed this action on Truist Bank's behalf. Third, the Firm wrote and filed Truist Bank's motion for summary judgment. In doing so, it was critical that the Firm present a thorough, professional, and persuasive motion to the court to avoid expenses associated with inferior work product.

19.      The "staging" of efforts reflected a reasonable and ongoing evaluation of the case needs.

20.      For the reasons described above, it is my opinion that: (a) the time the Firm spent in handling this case and preparing the motion for summary judgment was reasonable and necessary; (b) the Firm's rates are reasonable and necessary; and (c) the total fees of $18,346.44 billable to Truist Bank related to the request is reasonable and necessary.

*Expenses Incurred*

21.      Truist Bank also incurred $2,307.48 in expenses related to this matter: $750.00 for the investigator/process server to serve three citations and $850.00 to conduct due diligence in an attempt to locate the collateral; $402.00 for filing the original complaint; and $7.00 for research with the Texas Secretary of State to confirm details about Defendants. It is my opinion that these expenses are reasonable and necessary.

22.      The total amount of reasonable fees plus expenses for this matter is $20,653.92.

*Hearing & Appellate Fees*

23.    It is also my opinion that an additional $2,500 will be necessary if there is a hearing on this matter and for any further prosecution of this motion, $3,500 will be necessary if a motion to vacate is filed, and an additional $10,000 will be necessary if an appeal is filed. I base these opinions on my experience in handling motions for summary judgment in Dallas County and elsewhere—all of which I have summarized above.

24.    Partially redacted Johnston Clem Gifford PLLC professional fee invoices related to this matter are attached as **Exhibit D-1**.

25.    After considering the record in this case, the amount in controversy, and the other factors listed and examined above, it is my opinion that fees and expenses in the amount of $20,653.92 are reasonable and necessary attorneys' fees, court costs, and expenses for the prosecution of this matter through the date of the filing of Truist Bank's motion for summary judgment against all Defendants."

I declare under penalty of perjury that the foregoing is true and correct.

**EXECUTED** on this 4th of June 2021.

_____
**Ekaterina G. Long**



|  | Mailing Address | Wiring Instructions |
|---|---|---|
|  | 1717 Main Street, Suite 3000 | Truist Bank |
|  | Dallas, Texas 75201 | FBO Johnston Pratt PLLC Operating Account |
|  | (21 ███ 0 Main | Routing ███ 94 |
|  | ███ EIN | Account # ███ 4223 |

███
Truist Bank
███
███

| Invoice Number: | 4690 |
|---|---|
| **Invoice Date:** | 10/22/2020 |
| **Due Date:** | Upon Receipt |
| **For services through:** | 09/30/2020 |

Your Reference Number: ARG-A-106599
PAM-SC-976020-1
ARG-A-106599

**Matter:  Cuzzcast Gourmet Gelato LLC**

**Client Matter:  10006.30188.00** ███   ███ ███ ███

**Invoice Summary**
*See attached detail*



| Description | Amount |
|---|---|
| Invoice for Professional Services rendered through:  09/30/2020 | $1,749.70 |
| Reimbursement of Expenses | $301.48 |
| Discount | $87.49CR |
| **Total Current Charges** | **$1,963.69** |
| **Balance Carried Forward From Prior Invoice** | **$0.00** |
| **TOTAL BALANCE DUE** | **$1,963.69** |

**App. 051**

**EXHIBIT D-1**

Invoice For **Truist Bank**

| | |
|---|---|
| Invoice Number | **4690** |
| Invoice Date | 10/22/2020 |
| Page | 2 |

**Matter:** **Cuzzcast Gourmet Gelato LLC**
PAM-SC-976020-1
ARG-A-106599

**Professional Services**

| Date | Initials | Code | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|---|
| 09/18/2020 | KGL | L120 A104 | Draft ███ | 0.40 | $252 | 100.80 |
| 09/21/2020 | KGL | L120 A104 | Analyze the ███ ██ ███ | 0.20 | $252 | 50.40 |
| 09/23/2020 | KGL | L120 A103 | Continue analyzing ███ ████ | 1.00 | $252 | 252.00 |
| 09/23/2020 | KGL | L120 A103 | Draft a ███ | 0.30 | $252 | 75.60 |
| 09/23/2020 | KGL | L120 A103 | Draft an ████ of the ███ ██ ███ | 0.40 | $252 | 100.80 |
| 09/23/2020 | KGL | L120 A103 | Finalize the ███ evaluating the ███ ██ ███ and ███ | 3.00 | $252 | 756.00 |
| 09/23/2020 | MTM | L110 A103 | Preparation of ████ showing ████ ██ ███ ██ and ████ | 0.30 | $173 | 51.90 |
| 09/29/2020 | MTM | L110 A104 | Analyze issues surrounding ███ ███ after ███ ███ ███ | 0.20 | $173 | 34.60 |
| 09/30/2020 | KGL | L120 A104 | Analyze ███ █ ███ regarding the history of the ██ and ███ the ███ ███ off the ███ | 1.30 | $252 | 327.60 |

| | | |
|---|---|---|
| Fee Total | 7.10 hrs | 1,749.70 |

**Disbursements Advanced**

| Date | Initials | Code | Description | Amount |
|---|---|---|---|---|
| 09/22/2020 | KCJ | E112 | TXSOS Name Search | 3.00 |
| 09/29/2020 | KCJ | E112 | CT Lien Solutions - Lien Searches | 298.48 |

| | |
|---|---|
| Expense Total | 301.48 |

**App. 052**

Invoice For   **Truist Bank**

| | Invoice Number | **4690** |
|---|---|---|
| | Invoice Date | 10/22/2020 |
| | Page | 3 |

**Invoice Total**

| | | | | | |
|---|---|---|---|---|---|
| KGL | Katya G Long | 6.60 | $252 | 1,663.20 | |
| MTM | Mary T Mendoza | 0.50 | $173 | 86.50 | |
| | **Total Professional Services** | **7.10 hrs** | | **$1,749.70** | |
| E112 | Court fees | | | 301.48 | |
| | **Total Disbursements** | | | **301.48** | |
| Discount | | | | $87.49 CR | |

| **Total Current Charges** | **$1,963.69** |
|---|---|
| **TOTAL BALANCE DUE** | **$1,963.69** |



| Mailing Address | Wiring Instructions |
|---|---|
| 1717 Main Street, Suite 3000 | Truist Bank |
| Dallas, Texas 75201 | FBO Johnston Pratt PLLC Operating Account |
| (21███████0 Main | Routing ███████ |
| ████████ EIN | Account # ██████████ |

███████████
Truist Bank
████████████████
████████████

| | |
|---|---|
| **Invoice Number:** | 4778 |
| **Invoice Date:** | 11/24/2020 |
| **Due Date:** | Upon Receipt |
| **For services through:** | 10/31/2020 |

Your Reference Number: ARG-A-106599
PAM-SC-976020-1
ARG-A-106599

**Matter:  Cuzzcast Gourmet Gelato LLC**

**Client Matter:  10006.30188.00** ███████ ███████ ████████████████ ██████

**Invoice Summary**

*See attached detail*



| Description | Amount |
|---|---|
| Invoice for Professional Services rendered through:   10/31/2020 | $1,223.70 |
| Reimbursement of Expenses | $1.00 |
| Discount | $122.37CR |
| **Total Current Charges** | **$1,102.33** |
| **Balance Carried Forward From Prior Invoice** | **$0.00** |
| **TOTAL BALANCE DUE** | **$1,102.33** |

Invoice For  **Truist Bank**

| | |
|---|---|
| Invoice Number | **4778** |
| Invoice Date | 11/24/2020 |
| Page | 2 |

**Matter:  Cuzzcast Gourmet Gelato LLC**
PAM-SC-976020-1
ARG-A-106599

**Professional Services**

| Date | Initials | Code | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|---|
| 09/24/2020 | KCJ | L120 A103 | Review, revise, and edit ███████ ████ | 0.40 | $402 | 160.80 |
| 10/02/2020 | MTM | L110 A106 | Receive and review email from █████ respond to same. | 0.10 | $173 | 17.30 |
| 10/02/2020 | MTM | L110 A103 | Attend to ███████ █████████ █ Cuzzcast and guarantors. | 0.30 | $173 | 51.90 |
| 10/02/2020 | MTM | L110 A104 | Attend to █████ █████ ██████ for █████████ | 0.20 | $173 | 34.60 |
| 10/08/2020 | MTM | L210 A103 | Analyze issues regarding █████████ and █████ ██████ using ████ ████ as █ of ██████ | 0.20 | $173 | 34.60 |
| 10/08/2020 | MTM | L210 A106 | Email to ██████ forwarding █████ ████████ █████ for review. | 0.10 | $173 | 17.30 |
| 10/15/2020 | KGL | L120 A104 | Analyze the ████ ██████ to determine the ██████ ███ ███████ | 1.10 | $252 | 277.20 |
| 10/16/2020 | KGL | L120 A104 | Analyze███ ██████ ██ ████████ based on ██████ documents and ████ ████████ | 1.20 | $252 | 302.40 |
| 10/19/2020 | KGL | L120 A103 | Draft an analysis of the ████ and the █████ ████ ██████ | 0.80 | $252 | 201.60 |
| 10/27/2020 | KGL | L120 A104 | Analyze law on ██████ of ██████ ██████ in ████ █████ ████████ | 0.50 | $252 | 126.00 |

| | | |
|---|---|---|
| Fee Total | 4.90 hrs | 1,223.70 |

**Disbursements Advanced**

| Date | Initials | Code | Description | Amount |
|---|---|---|---|---|
| 10/16/2020 | KCJ | E112 | TXSOS Filing | 1.00 |

| | |
|---|---|
| Expense Total | 1.00 |

**App. 055**

Invoice For   **Truist Bank**

| | Invoice Number | **4778** |
|---|---|---|
| | Invoice Date | 11/24/2020 |
| | Page | 3 |

**Invoice Total**

| Code | Name | Hours | Rate | Amount |
|---|---|---|---|---|
| KCJ | Kenneth C. Johnston | 0.40 | $402 | 160.80 |
| KGL | Katya G Long | 3.60 | $252 | 907.20 |
| MTM | Mary T Mendoza | 0.90 | $173 | 155.70 |
| | **Total Professional Services** | **4.90 hrs** | | **$1,223.70** |
| E112 | Court fees | | | 1.00 |
| | **Total Disbursements** | | | **1.00** |
| Discount | | | | $122.37 CR |

**Total Current Charges** $1,102.33

**Balance Forward Summary**

| 10/22/2020 | Previous balance | | $1,963.69 |
|---|---|---|---|
| 11/03/2020 | Payment - Thank you, Check # Wire | Wire | 1,963.69 CR |
| **Net Balance Carried Forward** | | | **$0.00** |

**TOTAL BALANCE DUE** $1,102.33



<table>
<tr><td colspan="2"><b>Mailing Address</b></td><td colspan="2"><b>Wiring Instructions</b></td></tr>
</table>

|  |  |
|---|---|
| **Mailing Address** | **Wiring Instructions** |
| 1717 Main Street, Suite 3000 | Truist Bank |
| Dallas, Texas 75201 | FBO Johnston Pratt PLLC Operating Account |
| (21██0 Main | Routing ██94 |
| ██ EIN | Account # ██4223 |



Truist Bank

| | |
|---|---|
| **Invoice Number:** | 4860 |
| **Invoice Date:** | 12/15/2020 |
| **Due Date:** | Upon Receipt |
| **For services through:** | 11/30/2020 |

Your Reference Number: ARG-A-106599
PAM-SC-976020-1
ARG-A-106599

**Matter:  Cuzzcast Gourmet Gelato LLC**

**Client Matter:  10006.30188.██**

**Invoice Summary**
*See attached detail*



| Description | Amount |
|---|---|
| Invoice for Professional Services rendered through:   11/30/2020 | $3,118.90 |
| Reimbursement of Expenses | $453.00 |
| Discount | $311.89CR |
| **Total Current Charges** | **$3,260.01** |
| **Balance Carried Forward From Prior Invoice** | **$1,102.33** |
| **TOTAL BALANCE DUE** | **$4,362.34** |

| Invoice For | **Truist Bank** | | Invoice Number | **4860** |
|---|---|---|---|---|
| | | | Invoice Date | 12/15/2020 |
| | | | Page | 2 |

**Matter:  Cuzzcast Gourmet Gelato LLC**
PAM-SC-976020-1
ARG-A-106599

**Professional Services**

| Date | Atty | Task | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|---|
| 11/11/2020 | KCJ | L120 A103 | Review, revise and finalize ██████ ████ | 0.50 | $402 | 201.00 |
| 11/17/2020 | KCJ | L110 A104 | Investigate status of ████ and possible ████████ ██ of █████ | 0.40 | $402 | 160.80 |
| 11/17/2020 | KGL | L120 A103 | Draft complaint against borrower and guarantors. | 1.50 | $252 | 378.00 |
| 11/17/2020 | MTM | L210 A104 | Review █████████ ████ for each ████████ in ██████████ of ████████ | 0.20 | $173 | 34.60 |
| 11/18/2020 | KCJ | L120 A103 | Review ████████████████ and consider ████ for ██████████████ █████ ██████████ | 0.60 | $402 | 241.20 |
| 11/19/2020 | KGL | L120 A104 | Analy██████████████ and █ documents ████ine ██████████ a████████████ | 0.20 | $252 | 50.40 |
| 11/19/2020 | MTM | L210 A104 | Analyze issues surrounding ████ or ██████ █████ | 0.20 | $173 | 34.60 |
| 11/19/2020 | MTM | L210 A104 | Analyze issues surrounding ██████ ████████ | 0.80 | $173 | 138.40 |
| 11/19/2020 | MTM | L210 A108 | Email to ████████ █████ regarding ████████ ██████ | 0.20 | $173 | 34.60 |
| 11/20/2020 | KCJ | L210 A103 | Consider ████ ██████ issues and revise ██████ | 0.50 | $402 | 201.00 |
| 11/20/2020 | KGL | L120 A103 | Finalize the complaint and prepare it for filing. | 0.50 | $252 | 126.00 |
| 11/20/2020 | MTM | L210 A103 | Review and finalize complaint. | 0.70 | $173 | 121.10 |
| 11/20/2020 | MTM | L210 A106 | Attend to sending ██████ ██████ to ████ ██████ for █████ ███ to █████ | 0.10 | $173 | 17.30 |
| 11/23/2020 | KGL | L120 A104 | Analyze ██████ from ██████████ █████ █████ regarding the ██████ █████ ████████ and ██████ ████ of ████████ and follow up on same. | 0.40 | $252 | 100.80 |

**App. 058**

| Invoice For | **Truist Bank** | | | Invoice Number | **4860** |
|---|---|---|---|---|---|
| | | | | Invoice Date | 12/15/2020 |
| | | | | Page | 3 |

| Date | Atty | Task | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|---|
| 11/23/2020 | MTM | L210 A106 | Receive and respond to email from ███ regarding ███ to ██ ███████ and ██ from ██████ ███ | 0.10 | $173 | 17.30 |
| 11/23/2020 | MTM | L210 A108 | Telephone call with ██████ regarding possible ████ of ███████ and seeking additional information regarding ████ ████ | 0.20 | $173 | 34.60 |
| 11/23/2020 | MTM | L210 A104 | Review of photos submitted by ███ ██ of █████ ██████ | 0.20 | $173 | 34.60 |
| 11/23/2020 | MTM | L210 A104 | Analyze issues surrounding ████████ of ██████ in ███ and ██████████ ████ | 0.20 | $173 | 34.60 |
| 11/23/2020 | MTM | L210 A103 | Begin preparing Certificate of Interested Persons and Disclosure Statement; preparation of Summons for each defendant; preparation of exhibits; preparation of civil cover sheet. | 1.80 | $173 | 311.40 |
| 11/24/2020 | KGL | L120 A104 | Analyze ██████████████████ finding on the ███████████ and correspond with ████ ██ to determine the ████ of the ████████ on the ██████████████ vide ████ of ████████████ to ██ t████████ █ t██████████ regarding the ███ and ████████ | 1.10 | $252 | 277.20 |
| 11/24/2020 | MTM | L110 A102 | Research █████████/████████ of ███████ in order to gain information regarding ██████████ | 0.40 | $173 | 69.20 |
| 11/24/2020 | MTM | L210 A104 | Continue analyzing '██████ and ████████ issues. | 0.90 | $173 | 155.70 |
| 11/24/2020 | MTM | L110 A104 | Analyze results from ██████ and ██████ regarding | 0.90 | $173 | 155.70 |
| 11/24/2020 | MTM | L210 A103 | Begin preparing ████████ to ████ to include ██████ ████ | 0.70 | $173 | 121.10 |
| 11/25/2020 | KGL | L120 A104 | Analyze the ██████ ████ and ██████ ███████ against ██████████ and ████ | 0.20 | $252 | 50.40 |
| 11/25/2020 | MTM | L110 A108 | Communication with ██████████ regarding ██████ ██ of ████████ ████████ | 0.10 | $173 | 17.30 |

| | | | Fee Total | 13.60 hrs | | 3,118.90 |
|---|---|---|---|---|---|---|

**Disbursements Advanced**

| 11/17/2020 | KCJ | E112 | TXSOS - Name Search | | **App. 059** | 1.00 |
|---|---|---|---|---|---|---|
| 11/24/2020 | KCJ | E112 | TXSOS - Web Inquiry | | | 2.00 |

| Invoice For | **Truist Bank** | | Invoice Number | **4860** |
| --- | --- | --- | --- | --- |
| | | | Invoice Date | 12/15/2020 |
| | | | Page | 4 |

| 11/24/2020 | KCJ | E113 | ████ ████ Due diligence for ████ of ████ and for support of ████ ████ (████ 11/23/2020) for ████ ████ ████ ████ | 450.00 |
| | | | Expense Total | 453.00 |

**Invoice Total**

| KCJ | Kenneth C. Johnston | 2.00 | $402 | 804.00 |
| --- | --- | --- | --- | --- |
| KGL | Katya G Long | 3.90 | $252 | 982.80 |
| MTM | Mary T Mendoza | 7.70 | $173 | 1,332.10 |
| | **Total Professional Services** | **13.60 hrs** | | **$3,118.90** |
| E112 | Court fees | | | 3.00 |
| E113 | Subpoena fees | | | 450.00 |
| | **Total Disbursements** | | | **453.00** |
| Discount | | | | $311.89 CR |

| **Total Current Charges** | **$3,260.01** |
| --- | --- |
| **Balance Forward Summary** | |
| 11/24/2020   Previous balance ████████ $1,102.33 | |
| **Net Balance Carried Forward** | **$1,102.33** |

| **TOTAL BALANCE DUE** | **$4,362.34** |
| --- | --- |



| Mailing Address | Wiring Instructions |
|---|---|
| 1717 Main Street, Suite 3000 | Truist Bank |
| Dallas, TX 75201 | FBO Johnston Clem Gifford PLLC |
| (214) 974-8000 Main | Operating Account |
| ████ EIN | Routing #████694 |
| | Account #████34223 |

**Truist Bank**

| | |
|---|---|
| **Invoice Number:** | 00117 |
| **Invoice Date:** | 1/25/2021 |
| **Due Date :** | Upon Receipt |
| **For services through:** | 12/31/2020 |

Your Reference Number: ARG-A-106599

**Matter: Cuzzcast Gourmet Gelato LLC**
**Client Matter: 10006-30188.00**
**Invoice Summary**
*See attached detail*

| | |
|---|---|
| **Balance as of Last Bill :** | $6,326.03 |
| **Payments and Credits Applied :** | $6,650.96 |
| **Fees Incurred Since Last Bill :** | $2,563.10 |
| **Expenses Incurred Since Last Bill :** | $1,150.00 |
| **Balance This Bill :** | $3,584.94 |
| **TOTAL OUTSTANDING BALANCE DUE :** | $3,260.01 |

**App. 061**

**Matter:** Cuzzcast Gourmet Gelato LLC

## Professional Services

| Date | Staff | Primary Code | Secondary Code | Description | Hours | Rate | Amount |
|------|-------|--------------|----------------|-------------|-------|------|--------|
| 11/19/2020 | KCJ | L120 | A101 | Review status of ██████ ██████ update ████████, and prepare for ████████. | 0.30 | $402.00 | $120.60 |
| 11/19/2020 | KCJ | L120 | A104 | Delegate assignment to ██████ to support ██████ on ██████ | 0.30 | $402.00 | $120.60 |
| 11/20/2020 | KCJ | L210 | A103 | Revise and edit complaint. | 0.50 | $402.00 | $201.00 |
| 12/1/2020 | KCJ | L220 | A104 | Follow up on ██████ ██████ for purposes of evaluating ██████ ██████ | 0.30 | $402.00 | $120.60 |
| 12/1/2020 | MTM | L110 | A108 | Communications to and from ██████ regarding ██████ and contact with ██████ ██████ | 0.30 | $173.00 | $51.90 |
| 12/1/2020 | KGL | L120 | A104 | Analyze ██████ to determine the ██████ for the ██████ of the ██████ in a of ██████ and analyze the ██████ for | 1.40 | $252.00 | No Charge |
| 12/1/2020 | MTM | L210 | A104 | Analyze issues regarding ██████ and ██████ ██████ | 0.70 | $173.00 | $121.10 |
| 12/2/2020 | KGL | L120 | A104 | Analyze the ██████ on the ██████ to assess the ██████ of the ██████ of and email ██████ with further instruction to ██████ the ██████ email the ██████ ██████ to | 0.40 | $252.00 | $100.80 |
| 12/3/2020 | KGL | L120 | A108 | Analyze email from ██████ regarding the ██████ of the ██████ | 0.10 | $252.00 | $25.20 |
| 12/3/2020 | MTM | L120 | A104 | Analyze issues surrounding ██████ and next steps. | 0.40 | $173.00 | $69.20 |
| 12/3/2020 | KCJ | L120 | A103 | Consider ██████ needs to ██████ ██████ | 0.40 | $402.00 | $160.80 |
| 12/3/2020 | MTM | L110 | A108 | Communication with ██████ regarding ██████ to and need for ██████ to to those ██████ | 0.30 | $173.00 | $51.90 |
| 12/8/2020 | MTM | L110 | A108 | Communications with ██████ regarding ██████ analyze issues surrounding ██████ | 0.30 | $173.00 | $51.90 |
| 12/8/2020 | KGL | L120 | A108 | Email the ██████ regarding the ██████ of ██████ | 0.10 | $252.00 | $25.20 |
| 12/9/2020 | KCJ | L210 | A104 | Review and finalize lawsuit. | 0.60 | $402.00 | $241.20 |

| Date | Initials | Code | Code | Description | Hours | Rate | Amount |
|------|----------|------|------|-------------|-------|------|--------|
| 12/9/2020 | MTM | L210 | A103 | Finalize and file complaint, Certificate of Interested Persons, and each summons request with the court. | 0.90 | $173.00 | $155.70 |
| 12/10/2020 | KGL | L120 | A101 | Analyze ███████ █████ ███ as part of ██████ ██████ whether to █████████ to ██████ to a ████████████ ███████ instead of ███████ | 1.00 | $252.00 | No Charge |
| 12/10/2020 | MTM | L210 | A104 | Review file ███████ and ██████ ███████████ on ██████ ████████ | 0.50 | $173.00 | No Charge |
| 12/10/2020 | MTM | L210 | A108 | Attend to communication with ██████ ██████ forwarding ██████ ████████ and ████████ | 0.10 | $173.00 | $17.30 |
| 12/10/2020 | KGL | L120 | A103 | Supplement the ██████████ ██████ of █████ in ██████████ the ██████ of the ████████ | 1.30 | $252.00 | $327.60 |
| 12/10/2020 | MTM | L210 | A106 | Email to ███████ forwarding and ████████ on █████ of ████████ | 0.20 | $173.00 | $34.60 |
| 12/10/2020 | KGL | L120 | A104 | Analyze █████████ and █████ ██████ of █████████ to ████████ conducted by a █████████████ as █████████ to █████ █████████ as part of █████ a ████████████████ to the ██████ a ██████████████████ ████████ | 1.00 | $252.00 | No Charge |
| 12/11/2020 | MTM | L210 | A103 | Review of █████ of █████ █████ and attend to █████ | 0.40 | $173.00 | $69.20 |
| 12/11/2020 | KGL | L120 | A103 | Supplement the ██████████ ██████ of █████ | 0.30 | $252.00 | $75.60 |
| 12/11/2020 | MTM | L110 | A106 | Review email from ███████ regarding ██████ of ██████ from ████████ | 0.10 | $173.00 | $17.30 |
| 12/14/2020 | MTM | L210 | A108 | Email to and from ██████ █████ regarding status of ████████ on ██████████ ██████ | 0.20 | $173.00 | $34.60 |
| 12/14/2020 | KGL | L120 | A106 | Email ██████ █████ explaining the █████████████████ to █████ a ███████████ or ████████████ before a ████████ █████ and discussing the ██████████ █████ of ████████████ █████ before a ████████ | 0.30 | $252.00 | $75.60 |
| 12/15/2020 | KGL | L120 | A104 | Analyze the ██████ to a █████████ █████ █████ | 0.10 | $252.00 | No Charge |
| 12/16/2020 | MTM | L210 | A108 | Receive affidavit and return of service. | 0.20 | $173.00 | $34.60 |
| 12/16/2020 | MTM | L210 | A106 | Email to ████████████ forwarding █████ and ██████████ | 0.10 | $173.00 | $17.30 |
| 12/16/2020 | MTM | L210 | A108 | Prepare and file Return of Service for each defendant. | 0.30 | $173.00 | $51.90 |

| 12/17/2020 | MTM | L210 | A101 | Calendar deadlines for all defendants to answer. | 0.40 | $173.00 | $69.20 |
| 12/31/2020 | KCJ | L100 | A106 | Address ███████ issues and email ███████ regarding same. | 0.30 | $402.00 | $120.60 |

| **Fees Subtotal** | | | | | **14.10** | | **$2,563.10** |

## Expenses

| **Date** | **Primary Code** | **Description** | **Amount** |
|---|---|---|---|
| 11/24/2020 | E120 | David Snow Investigative Services - Follow investigation on ███ ████ on ███████ and in ███ ███████ with ███████ and ██████ ██████ preparation and completion of ██████ | $400.00 |
| 12/15/2020 | E113 | David Snow Investigative Services - Processed served on Maggie Caster, Susan Cuzzo, and Cuzzcast Gourmet Gelato, LLC | $750.00 |

| **Expenses Subtotal** | | | **$1,150.00** |

## Staff Summary

| **Name** | | **Hours** | **Rate** | **Amount** |
|---|---|---|---|---|
| KCJ | Kenneth C. Johnston | 2.70 | $402.00 | $1,085.40 |
| KGL | Ekaterina G. Long | 2.50 | $252.00 | $630.00 |
| KGL | Ekaterina G. Long | 3.50 | No Charge | No Charge |
| MTM | Mary T. Mendoza | 4.90 | $173.00 | $847.70 |
| MTM | Mary T. Mendoza | 0.50 | No Charge | No Charge |

| | | |
|---|---|---|
| **Subtotal** | **$3,713.10** |
| **Discount** | **$128.16** |
| **Total** | **$3,584.94** |
| **Previous Balance** | **$6,326.03** |

| 11/3/2020 | Payment | | -$1,963.69 |
| 12/15/2020 | Payment | | -$1,102.33 |
| 3/31/2021 | Credit | Credit per KJ | -$3,584.94 |

| **Payments & Credits** | **-$6,650.96** |
| **Balance Due** | **$3,260.01** |

We appreciate your prompt payment.

# Matter Statement of Account

## RE: 10006-30188.00 - Truist Bank - Cuzzcast Gourmet Gelato LLC

## Balance as of 4/19/2021

Open Bills

| Date | Invoice | Amount | Paid | Balance |
|------|---------|--------|------|---------|
| 4/13/2021 | 344 | $25.20 | $0.00 | $25.20 |
| 3/15/2021 | 253 | $2,651.22 | $215.06 | $2,436.16 |
| | | | **Balance Due** | **$2,461.36** |



| Mailing Address | Wiring Instructions |
|---|---|
| 1717 Main Street, Suite 3000 | Truist Bank |
| Dallas, TX 75201 | FBO Johnston Clem Gifford PLLC |
| (214) 974-8000 Main | Operating Account |
| ▮▮▮▮▮ EIN | Routing #▮▮▮▮▮▮ |
| | Account #▮▮▮▮▮▮▮ |

**Truist Bank**

| | |
|---|---|
| **Invoice Number:** | 00209 |
| **Invoice Date:** | 2/3/2021 |
| **Due Date :** | Upon Receipt |
| **For services through:** | 01/31/2021 |

Your Reference Number: ARG-A-106599

**Matter: Cuzzcast Gourmet Gelato LLC**
**Client Matter: 10006-30188.00**
**Invoice Summary**
*See attached detail*

| | |
|---|---|
| **Balance as of Last Bill :** | $6,844.95 |
| **Payments and Credits Applied :** | $3,260.01 |
| **Fees Incurred Since Last Bill :** | $6,449.80 |
| **Expenses Incurred Since Last Bill :** | $0.00 |
| **Balance This Bill :** | $6,127.31 |
| **TOTAL OUTSTANDING BALANCE DUE :** | $9,712.25 |

**App. 066**

**Matter:** Cuzzcast Gourmet Gelato LLC

## Professional Services

| Date | Staff | Primary Code | Secondary Code | Description | Hours | Rate | Amount |
|------|-------|--------------|----------------|-------------|-------|------|--------|
| 1/5/2021 | KGL | L120 | A104 | Analyze ███ of ████ and ███ on ████ in preparing a ████ for the ██ of ████ ████ against defendants. | 0.20 | $252.00 | $50.40 |
| 1/5/2021 | MTM | L210 | A103 | Begin drafting ██████ and ███ of ████ to include as ████ preparation of ██ | 2.90 | $173.00 | $501.70 |
| 1/5/2021 | KCJ | L240 | A101 | Review ███ and prepare for ████ a ████. | 0.30 | $402.00 | $120.60 |
| 1/6/2021 | MTM | L210 | A103 | Continue ██████ | 0.60 | $173.00 | $103.80 |
| 1/7/2021 | MTM | L210 | A103 | Continue █████ and ███ ████. | 1.10 | $173.00 | $190.30 |
| 1/7/2021 | MTM | L210 | A104 | Analyze issues regarding ████ by ████ and ███ after ███ and ██ of ████ for ██████ | 0.60 | $173.00 | $103.80 |
| 1/7/2021 | MTM | L210 | A104 | Receive and review answer served on firm for Caster and Cuzzo. | 0.30 | $173.00 | $51.90 |
| 1/7/2021 | MTM | L210 | A106 | Email ██████ regarding ██ of ███ and ████ | 0.20 | $173.00 | $34.60 |
| 1/7/2021 | MTM | L210 | A102 | Research ████ and ██████ on the ████. | 0.30 | $173.00 | $51.90 |
| 1/7/2021 | KCJ | L210 | A104 | Review answers filed by guarantors. | 0.20 | $402.00 | $80.40 |
| 1/11/2021 | KGL | L120 | A103 | Analyze ████████ of the ████ to the ███ to ████ ████████. | 2.20 | $252.00 | $554.40 |
| 1/12/2021 | MTM | L210 | A104 | Analyze issues surrounding ████ on ████ and ████ | 0.10 | $173.00 | $17.30 |
| 1/12/2021 | MTM | L210 | A103 | Begin drafting ████ of ████ to ██████ of ████ | 2.10 | $173.00 | $363.30 |
| 1/12/2021 | KGL | L120 | A103 | Analyze the ██████ of the ████ to the ███ to ████ ████████. | 2.10 | $252.00 | $529.20 |
| 1/12/2021 | MTM | L210 | A105 | Email with ████ regarding ████ to ██ in ██ of ████ | 0.10 | $173.00 | $17.30 |
| 1/12/2021 | KGL | L120 | A103 | Supplement ████ ████ to ███ the request to ██████ and ██████ ████ | 2.20 | $252.00 | $554.40 |
| 1/12/2021 | KGL | L120 | A103 | Draft ██████. | 1.30 | $252.00 | $327.60 |
| 1/12/2021 | KCJ | L250 | A103 | Address ██████ issues. | 0.30 | $402.00 | $120.60 |

**App. 067**

| Date | | | | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|---|---|
| 1/13/2021 | KGL | L120 | A103 | the ███ for ██ of a ███ . | 0.40 | $252.00 | $100.80 |
| 1/13/2021 | KGL | L120 | A105 | Email ████ regarding the ████ of the ███ for a ███ against ████ ██ | 0.10 | $252.00 | $25.20 |
| 1/13/2021 | MTM | L210 | A103 | Continue drafting ████ with a focus on ████ to ██ | 2.00 | $173.00 | $346.00 |
| 1/13/2021 | KCJ | L250 | A103 | Draft, revise, and edit default pleadings. | 0.40 | $402.00 | $160.80 |
| 1/13/2021 | MTM | L210 | A105 | Additional communication with ██ ███ regarding ████ to be ██ in ████ | 0.10 | $173.00 | $17.30 |
| 1/13/2021 | MTM | L210 | A101 | Plan and prepare for ██ of ██ with a focus on ████ | 0.10 | $173.00 | $17.30 |
| 1/13/2021 | MTM | L120 | A104 | Analyze issues surrounding ███ for ████ | 0.20 | $173.00 | $34.60 |
| 1/13/2021 | KGL | L120 | A104 | Analyze ████ to the ██ and ████ for ████ an ████ of ████ in ████ | 0.40 | $252.00 | $100.80 |
| 1/13/2021 | MTM | L210 | A108 | Telephone call with ████ ███ inquiring if ████ had ██ an ████ | 0.20 | $173.00 | $34.60 |
| 1/13/2021 | MTM | L210 | A104 | Analyze issues regarding ████ to ████ ██ | 0.50 | $173.00 | $86.50 |
| 1/13/2021 | KGL | L120 | A104 | Analyze ████ as to the ████ when there are ████ and ████ to the ████ | 0.50 | $252.00 | $126.00 |
| 1/14/2021 | MTM | L210 | A101 | Attend to ████ on all ████ of ██ on ████ | 0.10 | $173.00 | $17.30 |
| 1/14/2021 | MTM | L210 | A105 | Attend to ████ of ███ for ██ | 0.10 | $173.00 | $17.30 |
| 1/14/2021 | KCJ | L250 | A103 | ████ and ████ for ███ up ████ same. | 0.30 | $402.00 | $120.60 |
| 1/14/2021 | KGL | L120 | A105 | Email ████ regarding the ████ as to ███ an ████ by a ███ so as to ████ | 0.10 | $252.00 | $25.20 |
| 1/14/2021 | MTM | L210 | A103 | Begin drafting Notice of Received Answers by Cuzzo and Caster; draft correspondence to Ms. Cuzzo and Ms. Caster | 0.50 | $173.00 | $86.50 |
| 1/15/2021 | MTM | L210 | A101 | Instruction to ████ regarding ████ | 0.10 | $173.00 | $17.30 |

| Date | Initials | Code | Code | Description | Hours | Rate | Amount |
|------|----------|------|------|-------------|-------|------|--------|
| 1/15/2021 | MTM | L210 | A103 | Begin drafting correspondence to all Defendants | 0.50 | $173.00 | $86.50 |
| 1/15/2021 | KGL | L120 | A104 | Analyze the ██ of ██ and ██ the ██ to ██ to ██ of the ██ for ██ against the ██ ██ for its ██ to the ██ | 0.40 | $252.00 | $100.80 |
| 1/15/2021 | MTM | L210 | A103 | Finalize and file notice of answers received and request for default with the court. | 0.60 | $173.00 | $103.80 |
| 1/15/2021 | KCJ | L250 | A104 | Follow up on ██ ██ and ██ ██ by the ██ | 0.20 | $402.00 | $80.40 |
| 1/18/2021 | KGL | L120 | A103 | Supplement the leter to the individual defedants providing the notice of a default entry against the entity defendant. | 0.10 | $252.00 | $25.20 |
| 1/18/2021 | MTM | L210 | A104 | Analzye issues surrounding ██ ██ ██ | 0.30 | $173.00 | $51.90 |
| 1/18/2021 | KCJ | L120 | A103 | Draft and revise letter to pro se defendants about open issues and settlement, | 0.30 | $402.00 | $120.60 |
| 1/19/2021 | KGL | L120 | A103 | Supplement the transmittal letter to the defendants regarding the entry of the default. | 0.30 | $252.00 | $75.60 |
| 1/19/2021 | MTM | L210 | A103 | Begin drafting amended certificate of service to defendants. | 0.70 | $173.00 | $121.10 |
| 1/19/2021 | KGL | L120 | A104 | Analyze the ██ of ██ | 0.10 | $252.00 | $25.20 |
| 1/20/2021 | KGL | L120 | A105 | Email ██ for the ██ to | 0.10 | $252.00 | $25.20 |
| 1/20/2021 | KCJ | L240 | A104 | Consider ██ an ██ ██ for ██ ██ | 0.30 | $402.00 | $120.60 |
| 1/28/2021 | KCJ | L310 | A101 | Consider ██ ██ and direct ██ ██ to ██ a ██ ██ or | 0.30 | $402.00 | $120.60 |
| 1/28/2021 | MTM | L210 | A104 | Analyze next steps since ██ ██ ██ | 0.10 | $173.00 | $17.30 |
| 1/28/2021 | KGL | L120 | A105 | Email ██ ██ regarding the ██ to ██ regarding the ██ | 0.10 | $252.00 | $25.20 |
| 1/29/2021 | MTM | L310 | A103 | Begin drafting discovery requests to guarantors. | 1.40 | $173.00 | $242.20 |
| **Fees Subtotal** | | | | | **29.00** | | **$6,449.80** |

App. 069

**Staff Summary**

| Name | | Hours | Rate | Amount |
|---|---|---|---|---|
| KCJ | Kenneth C. Johnston | 2.60 | $402.00 | $1,045.20 |
| KGL | Ekaterina G. Long | 10.60 | $252.00 | $2,671.20 |
| MTM | Mary T. Mendoza | 15.80 | $173.00 | $2,733.40 |

|  |  |
|---|---|
| **Subtotal** | **$6,449.80** |
| **Discount** | **$322.49** |
| **Total** | **$6,127.31** |
| **Previous Balance** | **$6,844.95** |

| 1/4/2021  Payment #ACH - Truist/BB&T | -$3,260.01 |
|---|---|
| **Payments & Credits** | **-$3,260.01** |
| **Balance Due** | **$9,712.25** |

**We appreciate your prompt payment.**

**App. 070**

# Matter Statement of Account

## RE: 10006-30188.00 - Truist Bank - Cuzzcast Gourmet Gelato LLC

## Balance as of 3/4/2021

Open Bills

| Date | Invoice | Amount | Paid | Balance |
|------|---------|--------|------|---------|
| 2/3/2021 | 209 | $6,127.31 | $0.00 | $6,127.31 |
| 1/25/2021 | 117 | $3,584.94 | $0.00 | $3,584.94 |
| | | | **Balance Due** | **$9,712.25** |



| Mailing Address | Wiring Instructions |
|---|---|
| 1717 Main Street, Suite 3000 | Truist Bank |
| Dallas, TX 75201 | FBO Johnston Clem Gifford PLLC |
| (214) 974-8000 Main | Operating Account |
| ███6451 EIN | Routing #███7694 |
| | Account #██████4223 |

**Truist Bank**

| | |
|---|---|
| **Invoice Number:** | 00253 |
| **Invoice Date:** | 3/15/2021 |
| **Due Date :** | Upon Receipt |
| **For services through:** | 02/28/2021 |

Your Reference Number: ARG-A-106599

**Matter: Cuzzcast Gourmet Gelato LLC**
**Client Matter: 10006-30188.00**
**Invoice Summary**
*See attached detail*

| | |
|---|---|
| **Balance as of Last Bill :** | $9,712.25 |
| **Payments and Credits Applied :** | $6,342.37 |
| **Fees Incurred Since Last Bill :** | $2,367.60 |
| **Expenses Incurred Since Last Bill :** | $402.00 |
| **Balance This Bill :** | $2,651.22 |
| **TOTAL OUTSTANDING BALANCE DUE :** | $6,021.10 |

**App. 072**

**Matter:** Cuzzcast Gourmet Gelato LLC

**Professional Services**

| Date | Staff | Primary Code | Secondary Code | Description | Hours | Rate | Amount |
|------|-------|--------------|----------------|-------------|-------|------|--------|
| 2/2/2021 | MTM | L120 | A108 | Review of ███ ████ for ███ of | 0.40 | $173.00 | $69.20 |
| 2/2/2021 | KGL | L120 | A104 | Analyze ████ on ████ an ██ of a ████ ███ from the ██ and whether ███ ██ may ███ a ██ ████ as ████ for ██ of a ██ ████ | 0.30 | $252.00 | $75.60 |
| 2/2/2021 | KGL | L120 | A106 | Draft an email to ████ on the ██ and explain ███ █ ████ | 0.40 | $252.00 | $100.80 |
| 2/8/2021 | KCJ | L240 | A104 | Plan and prepare for ████ ████ ██ email to ███ regarding same. | 0.30 | $402.00 | $120.60 |
| 2/8/2021 | KGL | L120 | A105 | Email to ███ ██ regarding ███ for ████ and ███ ███ | 0.10 | $252.00 | $25.20 |
| 2/11/2021 | MTM | L310 | A103 | Continue drafting discovery requests to Cuzzo and Caster. | 2.00 | $173.00 | $346.00 |
| 2/12/2021 | KGL | L120 | A103 | Supplement written discovery requests to Susan Cuzzo. | 0.30 | $252.00 | $75.60 |
| 2/17/2021 | KGL | L120 | A103 | Draft written discovery requests to individual defendants. | 1.70 | $252.00 | $428.40 |
| 2/17/2021 | KGL | L120 | A105 | Email to ███ ██ regarding the ███ ██ to ██ ██ to ██ ████ and ██ to █ going forward. | 0.20 | $252.00 | $50.40 |
| 2/17/2021 | MTM | L210 | A104 | Review court's order regarding answers by defendants. | 0.20 | $173.00 | $34.60 |
| 2/17/2021 | MTM | L210 | A104 | Analzye issues regarding ██ of ██ by ██ for ██ to ███ | 0.20 | $173.00 | $34.60 |
| 2/17/2021 | KGL | L120 | A105 | Email ██ ████ regarding ███ ██ and the ██ ███ ███ | 0.10 | $252.00 | $25.20 |
| 2/18/2021 | MTM | L210 | A108 | Call to ████ regarding ███ ██ to ██ and ████ ████ | 0.20 | $173.00 | $34.60 |
| 2/18/2021 | MTM | L240 | A104 | Analyze issues surrounding ███ ███ in the ███ ██ do not ██ to ████ ██ | 0.20 | $173.00 | $34.60 |
| 2/18/2021 | KGL | L120 | A105 | Email ████ ████ regarding ███ ██ against ██ ███ in light of the ███ | 0.10 | $252.00 | $25.20 |

**App. 073**

| Date | | | | Description | | | |
|---|---|---|---|---|---|---|---|
| 2/24/2021 | KCJ | L310 | A103 | Draft, revise, and edit ███ ██ to ███ a ███ for ███ | 0.50 | $402.00 | $201.00 |
| 2/24/2021 | KGL | L120 | A103 | Finalize discovery requests to defendants. | 0.50 | $252.00 | $126.00 |
| 2/25/2021 | MTM | L310 | A103 | Finalize discovery for service on Defendants. | 2.40 | $173.00 | $415.20 |
| 2/25/2021 | MTM | L310 | A103 | Draft transmittal letter to defendants with discovery requests. | 0.40 | $173.00 | $69.20 |
| 2/25/2021 | KGL | L120 | A103 | Finalize the written discovery requests to individual defendants. | 0.20 | $252.00 | $50.40 |
| 2/25/2021 | KGL | L120 | A105 | Email ███ ██ regarding ███ and the ███ to ███ | 0.10 | $252.00 | $25.20 |

**Fees Subtotal**                                                  **10.80**        **$2,367.60**

**Expenses**

| Date | Primary Code | Description | Amount |
|---|---|---|---|
| 2/28/2021 | E112 | Filing Fee for Complaint | $402.00 |

**Expenses Subtotal**                                                        **$402.00**

**Staff Summary**

| Name | | Hours | Rate | Amount |
|---|---|---|---|---|
| KCJ | Kenneth C. Johnston | 0.80 | $402.00 | $321.60 |
| KGL | Ekaterina G. Long | 4.00 | $252.00 | $1,008.00 |
| MTM | Mary T. Mendoza | 6.00 | $173.00 | $1,038.00 |

|  |  |
|---|---|
| Subtotal | $2,769.60 |
| Discount | $118.38 |
| Total | $2,651.22 |
| Previous Balance | $9,712.25 |

| 3/4/2021 | Payment #ACH - BB&T | -$6,127.31 |
|---|---|---|
| 3/31/2021 | Credit    Credit per KJ | -$215.06 |

|  |  |
|---|---|
| Payments & Credits | -$6,342.37 |
| Balance Due | $6,021.10 |

We appreciate your prompt payment.

App. 074

# Matter Statement of Account

## RE: 10006-30188.00 - Truist Bank - Cuzzcast Gourmet Gelato LLC

## Balance as of 4/19/2021

Open Bills

| Date | Invoice | Amount | Paid | Balance |
|------|---------|--------|------|---------|
| 4/13/2021 | 344 | $25.20 | $0.00 | $25.20 |
| 3/15/2021 | 253 | $2,651.22 | $215.06 | $2,436.16 |
| | | | **Balance Due** | **$2,461.36** |



| Mailing Address | Wiring Instructions |
|---|---|
| 1717 Main Street, Suite 3000 | Truist Bank |
| Dallas, TX 75201 | FBO Johnston Clem Gifford PLLC |
| (214) 974-8000 Main | Operating Account |
| 82-1686451 EIN | Routing # 111017694 |
| | Account # 1440002234223 |

**Truist Bank**

| | |
|---|---|
| **Invoice Number:** | 00344 |
| **Invoice Date:** | 4/13/2021 |
| **Due Date :** | Upon Receipt |
| **For services through:** | 03/31/2021 |

Your Reference Number: ARG-A-106599

**Matter: Cuzzcast Gourmet Gelato LLC**
**Client Matter: 10006-30188.00**
**Invoice Summary**
*See attached detail*

| | |
|---|---|
| **Balance as of Last Bill :** | $6,236.16 |
| **Payments and Credits Applied :** | $3,800.00 |
| **Fees Incurred Since Last Bill :** | $25.20 |
| **Expenses Incurred Since Last Bill :** | $0.00 |
| **Balance This Bill :** | $25.20 |
| **TOTAL OUTSTANDING BALANCE DUE :** | $2,461.36 |

**App. 076**

**Matter:** Cuzzcast Gourmet Gelato LLC

**Professional Services**

| Date | Staff | Primary Code | Secondary Code | Description | Hours | Rate | Amount |
|------|-------|--------------|----------------|-------------|-------|------|--------|
| 3/1/2021 | KGL | L120 | A105 | Email ███ ███ regarding the to ███ ███ | 0.10 | $252.00 | $25.20 |

**Fees Subtotal**                                                                0.10                $25.20

**Staff Summary**

| Name | | Hours | Rate | Amount |
|------|------|-------|------|--------|
| KGL | Ekaterina G. Long | 0.10 | $252.00 | $25.20 |

**Total**  **$25.20**

**Previous Balance**  **$6,236.16**

3/31/2021 Credit Credit per KJ                                                            -$3,800.00

**Payments & Credits -$3,800.00**

**Balance Due  $2,461.36**

We appreciate your prompt payment.

**App. 077**

# Matter Statement of Account

## RE: 10006-30188.00 - Truist Bank - Cuzzcast Gourmet Gelato LLC

## Balance as of 4/19/2021

Open Bills

| Date | Invoice | Amount | Paid | Balance |
|------|---------|--------|------|---------|
| 4/13/2021 | 344 | $25.20 | $0.00 | $25.20 |
| 3/15/2021 | 253 | $2,651.22 | $215.06 | $2,436.16 |
| | | | **Balance Due** | **$2,461.36** |